[No. 21014-9-I. Division One. January 9, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM LOUIS DOWNEY, *Appellant*.

*Terrence Kellogg* and *Allan B. Ament*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ricardo Martinez, Deputy*, for respondent.

WINSOR, J.—William Downey appeals from a judgment and sentence for violations of the Uniform Controlled Substances Act. Downey contends the trial court erred in refusing to suppress evidence seized as a result of a warrantless search. We affirm.

Officers Mark Body and Bradley Thomas of the Seattle Police Department were dispatched to Downey's residence to investigate a report of a strong ether odor. Sergeant William Green joined Body and Thomas at the scene. The officers noticed an ether odor 150 to 200 feet from Downey's residence. This odor increased in intensity as the officers

moved closer to Downey's home. The officers contacted the police narcotics unit for advice on how to proceed. They were cautioned that ether is highly volatile and explosive in concentrated form, and were instructed to leave the residence and contact the fire department's hazardous materials squad if the smell of ether overpowered someone, or if open chemicals were found.

Green and Thomas entered Downey's residence to determine whether and why ether was inside the building and to ensure that no one was inside. They did not have a warrant. Green was able to enter only a few feet into the residence before the ether odor made him nauseous and interfered with his breathing. Green then left the building and called the hazardous materials unit.

Thomas continued into the residence, and found "a chemical–type lab with something cooking on a burner" in the basement. Thomas left the building and told Green what he had discovered. Green then called narcotics detectives. After obtaining a warrant based on information from Green and Thomas, detectives searched the lab and seized small amounts of methamphetamine in the manufacturing stage.

Downey was charged with possession of a controlled substance with intent to manufacture or deliver. Before trial, Downey moved to suppress evidence seized as a result of Thomas' and Green's warrantless search. The trial court concluded that the officers' warrantless entry was justified under the exigent circumstances doctrine, and denied Downey's motion. Downey then stipulated to the facts contained in the police reports and was found guilty as charged. He appeals.

Although warrantless searches are per se unreasonable, *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *State v. Chrisman,* 100 Wn.2d 814, 817, 676 P.2d 419 (1984), an emergency situation can justify such a search. 2 W. LaFave, *Search and Seizure* § 5.4(c) (2d ed. 1987). Thus, when premises contain persons in imminent danger of death or harm; objects likely to

burn, explode or otherwise cause harm; or information that will disclose the location of a threatened victim or the existence of such a threat, police may search those premises without first obtaining a warrant. Utter, J., *Survey of Washington Search and Seizure Law: 1988 Update,* 11 U. Puget Sound L. Rev. 421, 538–39 (1988); *see also State v. Loewen,* 97 Wn.2d 562, 568, 647 P.2d 489 (1982) (medical emergency); *State v. McAlpin,* 36 Wn. App. 707, 677 P.2d 185 (search for missing gun), *review denied,* 102 Wn.2d 1011 (1984).

In order for a search to come within the emergency exception, we must be satisfied that "the search was actually motivated by a perceived need to render aid or assistance." *Loewen,* 97 Wn.2d at 568. Therefore, the State must show that: (1) the searching officer subjectively believed an emergency existed; and (2) a reasonable person in the same circumstances would have thought an emergency existed. *Loewen,* 97 Wn.2d at 568; *McAlpin,* 36 Wn. App. at 716. In determining whether the first of these conditions is satisfied, the court may examine whether the officer's acts were consistent with his or her claimed motivation. *See Stewart v. State,* 681 S.W.2d 774, 778 (Tex. Ct. App. 1984).

In the instant case, the trial court found as fact that "there is no question that the officers believed that they had a very dangerous, emergency situation on their hands." We have examined the record and conclude that substantial evidence supports this finding. The State has met its burden as to the subjective belief requirement of the emergency exception.

We also hold that the State proved the objective reasonableness of the search. The relevant circumstances are that: (1) Green and Thomas knew that ether in high concentrations was present, and that ether in high concentrations can be extremely volatile and explosive; (2) Downey's home was in a residential area where an explosion could have disastrous consequences; and (3) the officers did not know whether someone incapacitated by the fumes remained inside Downey's residence. We conclude that a reasonable

person in these circumstances would have thought an emergency which demanded an immediate search existed, *see McAlpin,* 36 Wn. App. at 718, and that the search was reasonable and, therefore, constitutional.

Downey argues, however, that the search was unreasonable under the rule that the objective reasonableness of the smell of ether alone is insufficient to create exigent circumstances. Downey cites three cases which he claims establish this rule, *United States v. Tate,* 694 F.2d 1217 (9th Cir. 1982), *vacated and remanded,* 468 U.S. 1206 (1984), *rev'd on other grounds on remand,* 795 F.2d 1487 (1986); *United States v. Speaks,* 649 F. Supp. 1065 (E.D. Wash. 1986); and *United States v. Impink,* 728 F.2d 1228 (9th Cir. 1984). We reject Downey's argument as these cases do not stand for the rule claimed by Downey and are, in any event, irrelevant to the instant case. *Tate* and *Speaks* each address whether information in a search warrant is sufficient to establish probable cause to believe an unlawful drug laboratory is on the premises to be searched. They do not address whether an emergency justifying a warrantless search existed. Although *Impink* does concern exigent circumstances justifying a warrantless entry, those circumstances only concern the known existence of a chemical lab, not the presence of an "overpowering" odor of ether.

Indeed, courts recognize that a high level of ether can justify a warrantless search. In *United States v. Echegoyen,* 799 F.2d 1271 (9th Cir. 1986), the court found the odor of ether, noticeable from as far away as one–eighth of a mile, justified a warrantless entry to prevent physical harm to the officers and to address a possible fire hazard.

Similarly, in *People v. Duncan,* 42 Cal. 3d 91, 103–04, 720 P.2d 2, 227 Cal. Rptr. 654, 661 (1986), the California court explained:

> [T]he strong smell of ether, equally consistent with criminal and innocent activity, but in either event indicative of possible danger, justifies further investigation by law enforcement officers.

If this further investigation reveals "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property . . ." a warrantless entry, search or arrest may be justified. "[I]n each case the claim of an extraordinary situation must be measured by the facts known to the officers."

(Footnote and citations omitted.) We believe that Officers Green and Thomas faced a situation like that described in *Duncan.*

The judgment and sentence is affirmed.

WEBSTER and PEKELIS, JJ., concur.