[No. 24032-3-I. Division One. November 13, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY RALPH SWENSON, *Appellant*.

*Michael P. Iaria* and *Nance, Iaria & Gombiner,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

FORREST, J.—Jeffrey Swenson appeals from his conviction for possession of marijuana with intent to deliver, claiming that the court erred by admitting evidence from an illegal search of his home. We agree and reverse.

At about 2:30 a.m. on August 5, 1988, a neighbor notified police that the front door to Swenson's house was open. Police Officer Davidson arrived on the scene and spoke to the neighbor, who said that no one seemed to be in the house. There was no car parked in the driveway, and a dog was barking in the front yard. Davidson called for backup. When Officer Castillo arrived, the two officers called several times into the house identifying themselves and asking if anyone was inside. There was no response. Without checking for other signs of entry, and without doing a "perimeter check" around the house, the officers drew their weapons, entered, and systematically searched the house room by room for a burglar or an injured person.

They searched the bedroom last, finding a small amount of marijuana in the open. The smell of marijuana throughout the house was too strong for the amount that they had observed. Still looking for a person hiding within the house, the officers found a mirror under the bed with cocaine residue and two short tubes. The two officers then left the house.

As they left, Swenson's girl friend pulled into the driveway. The officers told her why they were there and what they had found. She denied knowing anything, and agreed to sign a consent to search the house.

During the subsequent search, the officers looked in a closet and found three-fourths of a pound of marijuana in a plastic bag, and a triple beam scale commonly used to weigh drugs. The officers summoned their sergeant and a narcotics detective, and by telephone applied for and received a search warrant. They then conducted a third search and found additional evidence.

Mr. Swenson was charged with one count of possession of marijuana with intent to deliver. Before trial he moved to suppress the evidence as the product of an illegal search. The court denied the motion to suppress, and the defendant was convicted at a stipulated trial.

■ Both the federal and state constitutions prohibit unreasonable searches. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable . . . subject only to a few specifically established and well–delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967). Exceptions exist to the warrant requirement, such as exigent circumstances where there is probable cause but insufficient time to obtain a warrant. Courts have also established a separate emergency exception for circumstances where there is no probable cause of a crime, as when an officer enters a house to give emergency medical assistance.[1]

---

[1]*See State v. Lynd*, 54 Wn. App. 18, 20–21, 771 P.2d 770 (1989): "An emergency situation, however, can justify a warrantless search. 2 W. LaFave, *Search and Seizure* § 5.4(c) (2d ed. 1987). For example, when premises contain persons in imminent danger of death or harm; objects likely to burn, explode or otherwise cause harm; or information that will disclose the location of a threatened victim or the existence of such a threat, police may search those premises without first obtaining a warrant. Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411, 538–39 (1988); *see State v. Loewen*, 97 Wn.2d 562, 568, 647 P.2d 489 (1982) (medical emergency); *State v. Downey*, 53 Wn. App. 543, 544–45, 768 P.2d 502 (1989) (overpowering ether odor); *State v. McAlpin*, 36 Wn. App. 707, 716, 677 P.2d 185 (search for missing gun), *review denied*, 102 Wn.2d 1011 (1984); *see also State v. Bakke*, 44 Wn. App. 830, 833–34, 837–38, 723 P.2d 534 (1986) (burglary in progress), *review denied*, 107 Wn.2d 1033 (1987); *State v. Nichols*, 20 Wn. App. 462, 465–66, 581 P.2d 1371 (1978) (fight in progress reported); *State v. Sanders*, 8 Wn. App. 306, 310–11, 506 P.2d 892 (1973)

██ After reviewing the authorities, the court in *State v. Lynd*, 54 Wn. App. 18, 21, 771 P.2d 770 (1989) formulated the emergency exception rule as follows:

> In order for a search to come within the emergency exception, we must be satisfied that the claimed emergency was not simply a pretext for conducting an evidentiary search and instead was "actually motivated by a perceived need to render aid or assistance." [*State v.*] *Loewen*, 97 Wn.2d [562, 647 P.2d 489 (1982)] at 568. To that end, the State must show that: (1) the searching officer subjectively believed an emergency existed; and (2) a reasonable person in the same circumstances would have thought an emergency existed. *Loewen*, 97 Wn.2d at 568; [*State v.*] *Downey*, 53 Wn. App. [543, 768 P.2d 502 (1989)] at 545; [*State v.*] *McAlpin*, 36 Wn. App. [707, 677 P.2d 185, *review denied*, 102 Wn.2d 1011 (1984)] at 716. In addition, there must be some reasonable basis to associate the emergency with the place searched. [*State v.*] *Nichols*, 20 Wn. App. [462, 581 P.2d 1371 (1978)] at 466.

Swenson acknowledges the emergency exception rule but argues that its "reasonable person" requirement is equivalent to probable cause required under exigent circumstances. Without probable cause, Swenson urges that the emergency rule cannot justify a search. The cases do not so hold, and we decline to limit the emergency exception in that manner. Nor do we wish to confuse the requirements of the two exceptions. Unlike exigent circumstances, the emergency exception does not involve officers investigating a crime; rather, the officers are assisting citizens or protecting property as part of their general caretaking responsibilities to the public. Indeed, in many emergencies there may be no suggestion of a crime at the time of entry, rendering the question of probable cause inapplicable.

In *State v. Bakke*[2] and *State v. Campbell*,[3] the courts applied the emergency doctrine to circumstances involving

---

(entry in response to emergency call and officer's observation of suspicious activity)."

[2]44 Wn. App. 830, 834, 723 P.2d 534 (1986), *review denied*, 107 Wn.2d 1033 (1987).

[3]15 Wn. App. 98, 547 P.2d 295 (1976).

suspected burglaries. As Swenson emphasizes, however, both courts found probable cause, but did not address the question of whether it necessarily had to exist. Here, the officers had no probable cause to believe a crime had occurred.[4] The officers were not investigating Swenson; they were endeavoring to protect Swenson's property and investigating a possible crime against it. Where the ultimate defendant is not the target of a criminal investigation, probable cause under the emergency exception is not required where the *Lynd* test is satisfied.

▮ Accordingly, the question becomes whether the facts known to the officers would justify a reasonable officer in the same circumstances to believe an emergency existed.[5] We hold they do not. There was no report of injured individuals or of persons acting inappropriately in the vicinity of Swenson's residence. The officers did not conduct a perimeter survey. They had no indication of forced entry, nor did they have any reason to suspect that individuals, injured or not, were in the residence. The barking dog was ambiguous, and by itself could not suggest an individual in medical distress. In short, the only evidence of an emergency was a door left open late on a summer night. In these circumstances, regardless of what the officers may subjectively have thought, a reasonable person would not believe an emergency existed.

No case is cited approving entry into a home on comparable facts. The State cites *People v. Lucero*,[6] where the

---

[4] We concur with the trial court's determination that there was no probable cause to believe a burglary had been committed.

[5] *State v. Lynd, supra.*

[6] 677 P.2d 370 (Colo. Ct. App. 1983), *cert. dismissed*, 706 P.2d 1283 (Colo. 1985).

police entered a house through an open door without a warrant. In *Lucero,* however, the police had received a report of a man hiding in the shadows near the defendant's house late at night, a suspicious circumstance not present here. The other cases cited by the State allowing warrantless searches of unlocked *business* premises after business hours are also unpersuasive.[7] The court in *State v. Myers*[8] allowed a warrantless search on unlocked business premises, but emphasized the

> profound differences distinguishing one's home from one's business . . ..
>
> The search challenged here occurred at 2:30 a.m., an hour at which the privacy of one's conduct in one's home deserves and receives the fullest protection afforded by the Constitution.

*Myers,* at 242–43.

The present case is more like *United States v. Selberg.*[9] There the court suppressed evidence gained from a warrantless entry where a house door was left open. The defendant had asked his neighbor to watch his house trailer while he was away. The neighbor watched the defendant depart without closing the front door. A day later the door was still open, and rather than closing it himself his wife called the police. An officer entered the trailer, noting that nothing appeared to have been disturbed. In a closed bedroom he found an illegal weapon. The appellate court reversed the judgment, finding that there was no emergency exception; there were no facts upon which the officer could

---

[7]*People v. Parra,* 30 Cal. App. 3d 729, 106 Cal. Rptr. 531 (entry into auto repair shop at 4 a.m. proper to "secure the premises"), *cert. denied,* 414 U.S. 1116, 38 L. Ed. 2d 743, 94 S. Ct. 849 (1973); *State v. Metz,* 422 N.W.2d 754 (Minn. Ct. App. 1988) (police entry proper into storage unit with missing lock).

[8]601 P.2d 239 (Alaska 1979).

[9]630 F.2d 1292 (8th Cir. 1980).

592

conclude that a person was inside needing medical care, nor that a crime had been or was being committed.

Reversed.

COLEMAN, C.J., and RINGOLD, J. Pro Tem., concur.