[No. 28457-6-I.   Division One.   July 27, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN
BRUCE MUIR, *Appellant.*

*Kenneth Friedman,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Wall, Deputy,* for respondent.

SCHOLFIELD, J. — Steven Muir appeals his conviction of possession of marijuana with intent to deliver, arguing the trial court should have suppressed physical evidence gathered in a warrantless search of his home. We reverse.

On May 15, 1989, a citizen called the Tukwila Police Department to report seeing individuals arrive at a residence he knew to be empty, prowl around, and load things into a car. Detective Stan McCall drove to the scene and pulled in front of a car with three men in it parked in the driveway of the house. Other officers arrived and began questioning the occupants of the car. McCall saw a pair of bolt cutters in the car, and another officer found a recently cut padlock lying on the ground next to the fence surrounding the house.

After reading the three men their *Miranda*[1] rights and asking some questions, the officers went to the residence to see if there had been a forced entry. As McCall walked by the car he noted a strong odor of marijuana. The officers checked the front door to the house, which was locked, and went to the back where there was "kind of a garage area that was connected to the house that we were able to just walk right into . . .". McCall noted an odor of marijuana. Inside, past some plastic partitions, the officers found a marijuana grow operation. As soon as the officers saw the marijuana, they stopped the search and sealed the house.

The police attempted to contact Steven Muir, owner of the house. McCall testified he had no indication anyone else was in the house. He also stated it was not because of an emergency that he entered the house:

> Q: So you went out there just to search for evidence of a burglary?
> A: That's correct.
> . . . .

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Q: You didn't feel like there was any emergency that would require you to go in immediately, did you?
A: No.

At the CrR 3.6 hearing, Muir challenged the admissibility of the marijuana the police found during their warrantless search. The trial court held that the officers' entry into the Muir residence was justified under the emergency doctrine because of the recent burglary, stating:

> [A] reasonable person in the same circumstances would have thought an emergency existed for the purposes of going into that residence to further investigate the burglary . . .
>
> This isn't a classic case of evidence of someone being injured or evidence of a person being injured. But under the quick timing here, I think that's an important factor, something that happened fairly quickly. The officers were justified under the emergency doctrine, in my judgment, in entering the residence. The entry was a limited one, they did stop. Once the emergency ceased, as it related to the burglary itself, the officers did not further search the inside of the residence without obtaining a search warrant.
>
> . . . .
> . . . I think the burglary still was in progress at that point in time for the purposes of the emergency doctrine.

Muir was convicted of possession of marijuana with intent to deliver, and appeals his conviction, contending there was no emergency to justify a warrantless search. The State argues that a recent burglary justifies a residential search under the emergency doctrine.

■ Both the federal and state constitutions prohibit unreasonable searches.[2] "[S]earches conducted outside the judicial

---

[2]The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 1, section 7 of the Washington Constitution states:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

Washington's state constitution offers greater protection against warrantless searches and seizures than the Fourth Amendment. *State v. Myers*, 117 Wn.2d 332, 337, 815 P.2d 761 (1991).

process, without prior approval by judge or magistrate, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Footnotes omitted.) *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507 (1967). Two well-established exceptions in Washington are exigent circumstances and the emergency doctrine. Both are pertinent to our decision.

■ Exigent circumstances exist where it may be impractical to obtain a search warrant: *Warden v. Hayden*, 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967) (hot pursuit); *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969) (interest in officers' safety justifies search incident to arrest); *Michigan v. Tyler*, 436 U.S. 499, 509, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978) ("compelling need for official action and no time to secure a warrant" justifies entry into burning building without warrant). In *State v. Terrovona*, 105 Wn.2d 632, 644, 716 P.2d 295 (1986), the court enumerated

> six elements to aid in determining when a warrantless police entry into a home is justified: (1) a grave offense, particularly a crime of violence, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; and (6) the entry is made peaceably. *Dorman [v. United States*, 435 F.2d 385 (D.C. Cir. 1970)], at 392-93. These factors supplement the exigencies this court gathered from other federal cases in *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983): (1) hot pursuit; (2) fleeing suspect; (3) danger to arresting officer or to the public; (4) mobility of the vehicle; and (5) mobility or destruction of the evidence.

In *State v. McIntyre*, 39 Wn. App. 1, 5, 691 P.2d 587 (1984), *review denied*, 103 Wn.2d 1017 (1985), the court found exigent circumstances when the police entered McIntyre's home without a warrant after he fought an officer, took his gun and threatened to kill him. On the other hand, in *State v. Morgavi*, 58 Wn. App. 733, 794 P.2d 1289 (1990), police searched a residence after seeing a broken garage door and a car in the driveway with its windows rolled down. The court concluded there was insufficient evidence that a burglary

had occurred, and thus there were no exigent circumstances warranting a search.

■ Courts have also established the emergency exception to the requirement for a search warrant, whereby police may enter a building if they reasonably believe persons are in imminent danger of death or harm, or where there are objects likely to burn or explode. 2 W. LaFave, *Search and Seizure* § 6.5(d) (2d ed. 1987). "[P]olice owe other duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventative measures, and providing services on an emergency basis." *State v. Bakke*, 44 Wn. App. 830, 834, 723 P.2d 534 (1986), *review denied*, 107 Wn.2d 1033 (1987).

The emergency rule was first articulated under Washington law in *State v. Sanders*, 8 Wn. App. 306, 310, 506 P.2d 892, *review denied*, 82 Wn.2d 1002 (1973), which stated that "[p]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *See also State v. Nichols*, 20 Wn. App. 462, 465, 581 P.2d 1371 (police responding to a reported fight could enter a garage because they had reasonable grounds to believe their assistance was necessary for the protection of life), *review denied*, 91 Wn.2d 1004 (1978).

Because exigent circumstances constitute a law enforcement "emergency", as opposed to a medical one, there has been some blurring of the delineation between the two exceptions. This has occurred in the case of burglaries, where a burglar may not only still be on the premises — giving rise to exigent circumstances — but may also have caused an emergency to a victim or to property. In *State v. Campbell*, 15 Wn. App. 98, 547 P.2d 295 (1976), for example, police were summoned to investigate a burglary that a neighbor witnessed. Police officers entered the apartment to look for possible participants in the burglary and to aid any victims. *Campbell*, at 99. The court held that

[i]t is reasonable for officers, responding to a request for police assistance and with probable cause to believe that an open,

> unsecured dwelling has been recently burglarized, to immediately enter the dwelling without a warrant . . ..

*Campbell*, at 100. The *Campbell* court made no distinction between the two exceptions, though its analysis seems based both on the exigent circumstance that burglars could be in the apartment and on the emergency exception that there might be victims inside requiring medical aid.

In *State v. Bakke, supra*, a neighbor saw two juveniles fleeing from the back door of a house and informed the police. Officers observed broken glass in the rear door, fresh muddy footprints leading from the rear door to an inner door that was broken at the jamb, and a light on inside. They did not know whether a burglar was still in the house. After entering the house to secure its contents and locate suspects, police discovered marijuana plants. The issue in *Bakke* was

> whether the initial warrantless entry into Bakke's home was justified under the state and federal constitutions as falling within the emergency exception to the warrant requirement where the police had probable cause to believe that a burglary had been or was being committed.

*Bakke*, at 832. The present issue is similar, except that *Bakke* is a better example of exigent circumstances (the officers thought there may still be suspects in the house) than the emergency doctrine, because no property or medical emergency was involved. The *Bakke* court allowed the evidence, reasoning that the search was made under exigent circumstances and only in those areas of the house where a burglar could be hiding. *Bakke*, at 841.

The court in *State v. Lynd*, 54 Wn. App. 18, 21, 771 P.2d 770 (1989) emphasized that an officer's subjective belief that an emergency exists must be objectively reasonable. *Lynd* involved a warrantless search where a man admitted to police that he assaulted his wife, but claimed she had left the house and was " 'right down the street.' " *Lynd*, at 19. The officer's entry into the house to look for the man's wife was deemed reasonable, because the victim may have needed assistance. The court held that for a search to come within the emergency exception:

we must be satisfied that the claimed emergency was not simply a pretext for conducting an evidentiary search and instead was "actually motivated by a perceived need to render aid or assistance." [*State v. Loewen*, 97 Wn.2d 562, 568, 647 P.2d 489 (1982).] To that end, the State must show that: (1) the searching officer subjectively believed an emergency existed; and (2) a reasonable person in the same circumstances would have thought an emergency existed.

*Lynd*, at 21.

Other cases have followed the 2-pronged test of the emergency doctrine from *Loewen* and *Lynd: State v. Cahoon*, 59 Wn. App. 606, 608, 799 P.2d 1191 (1990) (emergency medical technicians' entry into house), *review denied*, 116 Wn.2d 1014 (1991); *State v. Downey*, 53 Wn. App. 543, 545, 768 P.2d 502 (1989) (warrantless search of house to investigate strong smell of ether); *State v. Welker*, 37 Wn. App. 628, 683 P.2d 1110 (1984) (warrantless entry into residence in response to a call from a woman who said she had just been raped).

In *State v. Swenson*, 59 Wn. App. 586, 799 P.2d 1188 (1990), police searched a house with its front door wide open at 2:30 in the morning. The officers drew their weapons, entered and "systematically searched the house room by room for a burglar or an injured person." *Swenson*, at 587. During the search, they found marijuana in a bedroom. The question in *Swenson* was whether, without probable cause, the officers were justified by the emergency exception to search the house. The court distinguished the emergency exception from exigent circumstances:

> Unlike exigent circumstances, the emergency exception does not involve officers investigating a crime; rather, the officers are assisting citizens or protecting property as part of their general caretaking responsibilities to the public.

*Swenson*, at 589. The court concluded that there were insufficient reasons for the officers to conclude an emergency existed to justify the search and reversed the lower court's judgment.

Here, the trial court concluded that a recently committed burglary itself presents an "emergency" justifying a warrantless search. In the context of exigent circumstances, we

find no justification in the present case for a warrantless search. None of the factors listed by *Terrovona* were present — there was no indication a suspect was about to flee or evidence was about to be destroyed that would justify a hasty police response. In fact, it did not seem to occur to McCall that anyone was still in the house:

Q: Did you have any indication that there might be anybody else in the house?
A: No.

. . . .

Q: Did [it] enter into your thinking [that Muir was married or anybody else lived there] when you entered into the property or not?
A: No.
Q: So you went out there just to search for evidence of a burglary?
A: That's correct.

Had the officers thought a burglar was still in the house, it is unlikely they would have waited 30 minutes or more before entering.[3]

Rather than exigent circumstances, the State, and the trial court, relied on the emergency doctrine. To the extent that it is distinguishable from exigent circumstances, the emergency doctrine does not require probable cause, but must be " 'actually motivated by a perceived need to render aid or assistance.' " *Lynd,* at 21 (quoting *State v. Loewen,* 97 Wn.2d 562, 568, 647 P.2d 489 (1982)). Here, Detective McCall did not believe that anyone was in the house who needed assistance, or that there was any type of emergency:

Q: You didn't feel like there was any emergency that would require you to go in immediately, did you?
A: No.

Detective McCall knew from dispatch that Muir was at work, and it did not occur to him that anyone lived with Muir who might be in distress. Nor would a reasonable person in his position have any reason to believe there was an emergency requiring a warrantless search.

---

[3]The trial court's reference to "the quick timing here" was probably not justified given the 30-minute wait and the absence of other burglars suspected to be in the house. Had the wait been less, we see no reason our decision would be different.

As soon as McCall saw the marijuana, he stopped the search[4] and left the house to get a warrant. This corroborates his statements that he and the other officer were not entering the house in response to an emergency. Had their purpose been to render aid, they would not have stopped their entry into the house upon seeing the marijuana, but would have continued into the house to find the person or property requiring assistance.

We find that Detective McCall's entry into the house was to search for evidence, unmotivated by a perceived need to render aid or assistance, and his doing so without a warrant was unjustified either by exigent circumstances or the emergency exception.

Reversed.

FORREST and AGID, JJ., concur.

---

[4]The State's contention that the "emergency" ceased upon discovery of the marijuana in the house suggests a definition of "emergency" at odds with the requirements of both the emergency doctrine and the exigent circumstances exception.