[No. 15893-1-II.   Division Two.   August 10, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. DALE WAYNE MENZ, *Appellant.*

*Kris A. Zabriskie* and *Olson, Zabriskie & Campbell,* for appellant.

*H. Steward Menefee, Prosecuting Attorney,* and *James P. Hagarty, Deputy,* for respondent.

MORGAN, C.J. — Dale Wayne Menz appeals his conviction for manufacture of marijuana. He contends that the trial court erred in refusing to suppress evidence seized in a warrantless search of his home. We affirm.

On January 23, 1992, at 5:30 p.m., an anonymous caller called the Hoquiam police to report domestic violence in progress at 2639 Sumner. Although unsure, the caller thought the participants were named Debbie and Dale, and that a 10-year-old child lived with them. The caller was

unsure about the presence of weapons. 2639 Sumner was the address of Dale Menz.

When three officers responded, they found that the front door to the residence was standing open 5 or 6 inches. The officers could not see into the home, but they could hear a television playing inside. No vehicles were in the driveway, and the household lights were on.

The officers knocked and announced their presence two or three times. They received no response. Concerned about the home's occupants, they entered and began searching areas large enough to hold a person in hiding, or a person incapable of responding.[1] When they entered a bedroom, they discovered marijuana plants. They subsequently obtained a search warrant, returned, and seized the plants.

The State charged Menz with manufacturing marijuana. Menz moved to suppress the marijuana on grounds that the search of his home had been illegal. The trial court denied the motion, holding that the police had been justified in entering and searching for injured people. Menz was found guilty and sentenced to 60 days in jail.

■ Both the federal and state constitutions prohibit unreasonable searches. U.S. Const. amend. 4; Const. art. 1, § 7. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." (Footnote omitted.) *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967).

■ An exception exists for emergencies. *State v. Loewen*, 97 Wn.2d 562, 647 P.2d 489 (1982); *State v. Gocken*, 71 Wn. App. 267, 274, 857 P.2d 1074 (1993), *review denied*, 123 Wn.2d 1024 (1994); *State v. Swenson*, 59 Wn. App. 586, 588, 799 P.2d 1188 (1990). It recognizes the community caretaking function of police officers, and exists so officers can assist citizens and protect property. *Swenson*, 59 Wn. App. at 589;

---

[1] An officer who was on the scene explained that, in his experience, domestic violence victims sometimes hide from police because they are ashamed to expose their injuries, or because they have been threatened with violence.

*State v. Hutchison,* 56 Wn. App. 863, 865-66, 785 P.2d 1154 (1990). It

> was first articulated under Washington law in *State v. Sanders,* 8 Wn. App. 306, 310, 506 P.2d 892, *review denied,* 82 Wn.2d 1002 (1973), which stated that "[p]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." *See also State v. Nichols,* 20 Wn. App. 462, 465, 581 P.2d 1371 (police responding to a reported fight could enter a garage because they had reasonable grounds to believe their assistance was necessary for the protection of life), *review denied,* 91 Wn.2d 1004 (1978).

*State v. Muir,* 67 Wn. App. 149, 153, 835 P.2d 1049 (1992). It applies when

> (1) the officer subjectively believed that someone likely needed assistance for health or safety reasons; (2) a reasonable person in the same situation would similarly believe that there was a need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place searched.

*State v. Gocken,* 71 Wn. App. at 276-77; *see also Loewen,* 97 Wn.2d at 568.

The first requirement is satisfied here. The officers testified that they subjectively believed someone in the home might need help. The judge accepted their testimony, finding "[t]hat the officers' entry was designed solely to determine if anyone might be present within the residence who was injured and unable to respond due to those injuries, or refusing to respond out of fear."[2]

The second and third requirements are also satisfied. The officers were responding to a report of domestic violence. It was a winter night. The front door was open, the lights were on, and the TV was playing, but they could raise no answer from anyone inside. Even though the initial report was anonymous, a reasonable person facing this combination of circumstances would have thought that someone inside needed assistance, and the officers were within the emergency exception when they entered.

We recognize that two important policies are competing in this case. The first is to allow the police to assist those who

---

[2]Clerk's Papers, at 55.

are injured and need assistance; as stated in *State v. Raines*, 55 Wn. App. 459, 465, 778 P.2d 538 (1989), *review denied*, 113 Wn.2d 1036 (1990), "[p]olice officers responding to a domestic violence report have a duty to ensure the present and continued safety and well-being of the occupants" of a home. The other policy is to protect citizens against warrantless searches not based on probable cause. Resolution of this competition turns on the facts and circumstances of each case, and in our view the facts of this case fall on the side of allowing the police to help those who need assistance.

Menz asserts that this holding will lead to the police intruding into private homes based on unreliable anonymous tips. However, we disagree. If police reacting to an anonymous tip of domestic violence find normal circumstances — for example, the house is dark, the front door is closed, no occupant responds to knocking — the tip is not corroborated and entry is not permitted. On the other hand, if the police find abnormal circumstances — for example, the front door is open on a winter night, lights are on, a TV is playing, yet no one answers the door — the tip is corroborated and entry is permitted. In neither case are the police allowed to enter solely by virtue of an unreliable anonymous tip.

We distinguish *Swenson*, on its facts. The only peculiar circumstance in that case was that the front door was open at 2:30 a.m. There was no indication that anyone was home, no indication that anyone was being hurt, and no indication that a crime was taking place. In contrast, the police in this case were told that domestic violence was occurring. They had reason to believe people were home because the front door was open on a winter night, the lights were on, and the TV was playing. Yet they could not get anyone to answer the front door. As we have already explained, these circumstances generated a reasonable concern for the well-being of the home's occupants, even though the circumstances in *Swenson* did not.

Lastly, Menz contends the police exceeded the scope of a permissible search when they entered the closed bedroom.

Again, we disagree. Given that the police could legally search for a victim of domestic violence, the scope of the search included bedrooms and areas where a victim could be.

Affirmed.

SEINFELD and HOUGHTON, JJ., concur.

Review denied at 125 Wn.2d 1021 (1995).