62 P.3d 520 (2003)
115 Wash.App. 264
STATE of Washington, Respondent,
v.
Wayne Frederick SCHLIEKER, Appellant.
State of Washington, Respondent,
v.
Melinda Jo Butterfield, Appellant.
Nos. 27174-5-II, 27217-2-II.
Court of Appeals of Washington, Division 2.
January 31, 2003.
*522 Michelle Luna-Green, Pierce Co. Pros. Atty., Kathleen Proctor, Deputy Pros. Atty., Tacoma, for Respondent.
Richard Dale Shepard, Shepard Law Office, Inc., Pattie Mhoon, Tacoma, for Appellants.
*521 BRIDGEWATER, J.
In this consolidated appeal, Wayne Frederick Schlieker and Melinda Jo Butterfield challenge their convictions for unlawful manufacture of a controlled substance. We hold that the warrantless entry into their trailer did not fall within the community caretaking exception. There is substantial evidence that the claimed emergency was a mere pretext for an evidentiary search, especially as following their entry, the deputies handcuffed and arrested the occupants instead of inquiring into their well-being. Because the entry was unlawful, all evidence and statements were fruit of the poisonous tree and should have been suppressed. We reverse.
In October 2000, two Pierce County Sheriff's deputies responded to a domestic disturbance call at the home of Connie and Michael Voss. The Vosses' 10-year-old son had telephoned 911 from a neighbor's house to report yelling, screaming, and a gunshot at his home.
The deputies spoke with the Vosses, who were visibly upset. Connie explained that she and Michael were arguing about Schlieker and Butterfield, who had moved a trailer onto the Vosses' property and were staying without permission. The Vosses suspected drug activity at the trailer and wanted Schlieker and Butterfield to leave. Connie asked the deputies to speak with Schlieker and Butterfield. When asked about the gunshot, Connie said that a cigarette lighter had exploded in the clothes dryer. The deputies investigated and found no evidence of an explosion.
As the uniformed deputies neared the trailer, they saw two men and called out to them. The men, Earl Averill and David Bailey, jumped into a nearby car and attempted to flee. Worried about the report of gunfire and being run down, the deputies drew their sidearms, ordered the men out of the car and handcuffed them.
Averill nervously explained that the car belonged to Schlieker, who was in the trailer. Concerned that the men were stealing the car and that someone in the trailer might be injured, the deputies called out to Schlieker through the trailer's open door. Receiving no response, the deputies called out again, waited 10 to 15 seconds, and entered the trailer.
The deputies found Butterfield in bed under a pile of blankets and Schlieker in the bathroom. The deputies handcuffed both Butterfield and Schlieker and removed them from the trailer. While exiting the trailer, one of the deputies commented on a package of lithium batteries by the door. Butterfield responded, "Big deal, lithium batteries; you can't prove anything."[1]
One of the deputies then re-entered the trailer and looked behind the shower curtain to see if anyone was hiding; he saw only funnels and tubing. The other deputy walked around the trailer and saw a pick-up truck; through the truck's open window, he smelled a strong chemical odor and saw several items associated with methamphetamine manufacturing.
Detective Pecheos then advised both Schlieker and Butterfield of their Miranda[2] rights and questioned them separately. *523 Schlieker asserted his right to silence. Butterfield admitted that she and Schlieker lived in the trailer but denied knowing that anyone was manufacturing methamphetamine on the property.
Pecheos then told Schlieker and Butterfield that they were both going to jail because he could not determine who was responsible for the methamphetamine lab. Schlieker announced that nothing in the trailer would indicate that he had manufactured methamphetamine and that the police would only find "some lithium batteries, some Red Devil lye and maybe some toluene" because "everything else was flushed down the toilet."[3]
After obtaining a search warrant for the trailer and the truck, authorities discovered items consistent with methamphetamine production, including: lithium batteries, stained coffee filters, muriatic acid, Mason jars, Isoheat, a hand-held grinder, rock salt, Coleman fuel, liquid drain cleaner, empty propane tanks that had contained anhydrous ammonia, empty cold-tablet packages, and a variety of solvents. Two of the jars contained substances that tested positive for pseudoephedrine. Schlieker's and Butterfield's fingerprints were on jars that did not contain methamphetamine, its precursors, or byproducts. The State charged Schlieker and Butterfield with unlawful manufacturing of a controlled substance, RCW 69.50.401(a)(1)(ii).
Schlieker moved to suppress his statements to Pecheos, arguing that Pecheos continued to interrogate him after he asserted his right to silence. The trial court denied the motion, concluding that Pecheos's statement was not reasonably likely to invoke a response from Schlieker and that Schlieker had waived his right to silence.
Both defendants moved to suppress the evidence, challenging the warrantless entry and the probable cause finding. The trial court denied the motions, concluding that the initial entry was lawful under the community caretaking exception and that Butterfield did not have standing to challenge the search of the truck.

I. Community Caretaking Function Exception
Both Schlieker and Butterfield argue that the deputies' warrantless entry into the trailer did not fall within the community caretaking exception.[4] We review the trial court's determination on a motion to suppress for substantial evidence and to see if the findings support the conclusions of law.[5] Substantial evidence is "a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding."[6] We review de novo the trial court's conclusions of law.[7]
Warrantless searches are per se unreasonable unless they fall within one of the narrowly drawn exceptions to the warrant requirement.[8] The State must prove that a warrantless search falls within an exception.[9]
The emergency exception recognizes the "community caretaking function of police officers, and exists so officers can assist citizens and protect property."[10] When the State invokes the emergency exception, "we must be satisfied that the claimed emergency was not simply a pretext for conducting an evidentiary search[.]"[11] Thus, the emergency exception justifies a warrantless entry when: (1) the officer subjectively believed that someone likely needed assistance for health or safety reasons; (2) a reasonable *524 person in the same situation would similarly believe that there was a need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place searched.[12] We evaluate "[w]hether [an] officer's acts in the face of a perceived emergency were objectively reasonable ... in relation to the scene as it reasonably appeared to the officer at the time, `not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis.'"[13]
Competing policies come into play when the State invokes the emergency aid exception: "(1) allowing police to help people who are injured or in danger and (2) protecting citizens against unreasonable searches."[14] We balance these policies in light of the facts and circumstances of each case.[15]
Routine health and safety checks involve less urgency than the emergency aid function.[16] In a caretaking situation, the admissibility of the evidence discovered depends on a "balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform" the community caretaking function.[17] When weighing these interests, "`the balance ought to be struck on the side of privacy[.]'"[18]
Butterfield assigns error to several of the trial court's findings, including that the deputies entered the trailer out of concern for Butterfield's and Schlieker's safety. Whether the deputies entered the trailer out of concern for the appellants is a close question.
Some evidence supports the community caretaking exception, including: the report of a gunshot on the property; the men who attempted to flee in the car, endangering the deputies; the trailer's open door; and no response to an inquiry. But the deputies' actions following their entry, coupled with their knowledge up to that point, do not satisfy us that the claimed emergency was more than a pretext for conducting an evidentiary search.
We note the following: (1) The State concedes that the deputies were not at the trailer out of concern for the defendants' safety but to investigate allegations of trespassing and drug activity; (2) the domestic violence call concerned the Vosses not anyone at the trailer; (3) the deputies had no information that someone inside the trailer was injured; (4) the gunshot was reported to have come from the house not the trailer; and (5) after finding Butterfield and Schlieker unharmed, the deputies did not inquire about their well-being, but handcuffed and arrested them and searched for evidence of criminal activity.
The deputies' actions and that they did not inquire into the occupants' safety, but instead handcuffed and arrested them, convince us that this was not a circumstance wherein the deputies were attempting to help people who were injured or in danger. The entry was a not so subtle intrusion into the appellants' privacy, rationalized with the "community caretaking" function so that the deputies could perform a search.
Because there is no substantial evidence to support the first prong of the emergency exception, that the deputies subjectively believed someone inside needed assistance, the emergency exception is not applicable here. As there was no other legal justification for the entry, everything discovered as a result of the entry must be suppressed.
*525 Thus, the appellants' statements and the discovery of other evidence based on the warrant was fruit of the poisonous tree, the unlawful entry and arrests, and it was error to deny the motion to suppress.[19]
Reversed.
We concur: SEINFELD, and ARMSTRONG, JJ.
NOTES
[1] 4 Report of Proceedings (RP) at 251.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] 2 RP at 49.
[4] See State v. Menz, 75 Wash.App. 351, 353, 880 P.2d 48 (1994), review denied, 125 Wash.2d 1021, 890 P.2d 463 (1995).
[5] State v. Crane, 105 Wash.App. 301, 305-06, 19 P.3d 1100 (2001).
[6] State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
[7] State v. Mendez, 137 Wash.2d 208, 212, 970 P.2d 722 (1999).
[8] State v. Parker, 139 Wash.2d 486, 496, 987 P.2d 73 (1999).
[9] Parker, 139 Wash.2d at 496, 987 P.2d 73.
[10] Menz, 75 Wash.App. at 353, 880 P.2d 48.
[11] State v. Lynd, 54 Wash.App. 18, 21, 771 P.2d 770 (1989).
[12] State v. Gocken, 71 Wash.App. 267, 276-77, 857 P.2d 1074 (1993), review denied, 123 Wash.2d 1024, 875 P.2d 635 (1994).
[13] Lynd, 54 Wash.App. at 22, 771 P.2d 770 (quoting State v. Bakke, 44 Wash.App. 830, 837, 723 P.2d 534 (1986), review denied, 107 Wash.2d 1033 (1987) (quoting Commonwealth v. Young, 382 Mass. 448, 416 N.E.2d 944, 950 (1981))).
[14] State v. Johnson, 104 Wash.App. 409, 418, 16 P.3d 680, review denied, 143 Wash.2d 1024, 25 P.3d 1020 (2001).
[15] Johnson, 104 Wash.App. at 418, 16 P.3d 680.
[16] See State v. Kinzy, 141 Wash.2d 373, 386, 5 P.3d 668 (2000), cert. denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001).
[17] Kinzy, 141 Wash.2d at 387, 5 P.3d 668.
[18] Kinzy, 141 Wash.2d at 392, 5 P.3d 668 (quoting United States v. Dunbar, 470 F.Supp. 704, 708 (D.Conn.), aff'd, 610 F.2d 807 (2d Cir.1979)).
[19] Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Kennedy, 107 Wash.2d 1, 4, 726 P.2d 445 (1986).