178 P.3d 1042 (2007)
142 Wash.App. 175
STATE of Washington, Respondent,
v.
Fred Irvine LEFFLER, Appellant.
No. 34019-4-II.
Court of Appeals of Washington, Division 2.
December 18, 2007.
*1044 Carol A. Elewski, Attorney at Law, Tumwater, WA, for Appellant.
¶ 1 Kathleen Proctor, Pierce County Prosecuting Atty. Office, Tacoma, WA, for Respondent.
PENOYAR, J.
¶ 1 Pierce County Sheriff's Department deputies responded to an anonymous tip complaining of chemical smells at Fred Leffler's property. Upon arrival, they discovered that Leffler had an outstanding Department of Corrections (DOC) felony escape warrant and arrested him. Leffler informed the officers that there was muriatic acid and a "gasser" inside the fifth wheel on the property, but he did not consent to a search. Clerk's Papers (CP) at 106. The deputies did not immediately search the premises but instead called in the Clandestine Lab Team (the Team) to do so. The team conducted a performance safety assessment of all structures on the property and found evidence of methamphetamine manufacturing; the trial court then convicted Leffler of manufacturing methamphetamine based on this evidence. Leffler argues that the evidence from the search was improperly admitted, and we agree. The emergency exception does not apply where there is not an imminent threat of substantial harm to persons or property, and there was no such threat here. However, the evidence from the illegal search may still be admissible if sufficient untainted evidence existed to support a finding of probable cause. We therefore remand for further proceedings at the trial court in accordance with this opinion.

FACTS
¶ 2 Deputy Jake Greger and his Community Support Team (CST) responded to an anonymous complaint alleging "strong chemical smells" coming from a property in Puyallup. Report of Proceedings (RP) (Sep. 1, 2005) at 7-8. Specifically, the caller stated that the smells were especially strong by the fifth wheel travel trailer near the property's driveway. The property contained a fifth wheel, a mobile home, a shed, and a garage. A neighboring home was "at least within 200 feet" of Leffler's trailer. CP at 110.
¶ 3 Upon arriving at the property, Deputy Greger could smell a "really harsh chemical smell" from about 30 feet away from the fifth wheel. RP (Sep. 1, 2005) at 10. A CST member knocked on the fifth wheel's door (from which the smell was emanating), and Fred Leffler exited the trailer and closed the door behind him.
¶ 4 The officers ran Leffler's name through the records system and discovered an outstanding DOC felony escape warrant. Deputy Greger arrested Leffler, placed him in the patrol car, and read him his Miranda[1] rights. Leffler informed Deputy Greger that a friend had been "pound[ing] out some slugs" in the fifth wheel, and that he was "gassing" (a specific phase of methamphetamine production). CP at 106. He also told officers that there was muriatic acid inside the fifth wheel, which is used in the final phase of methamphetamine manufacturing to create hydrochloric acid gas.
¶ 5 Community Corrections Officer McDonough (also a CST member) spoke with Leffler's probation officer and learned that he had permission to search the fifth wheel as part of Leffler's DOC conditions. Leffler refused to consent to the DOC search. Officer McDonough asked Leffler if there was a methamphetamine lab inside the trailer, and Leffler replied that there was some muriatic acid inside and a "gasser." CP at 106. Leffler also stated that he was the only person on the premises.
¶ 6 Based on Leffler's statements and the strong chemical smell, the officers concluded that it was not safe for them to enter the trailer, and they called the Team to the scene. While waiting for the Team, the CST began to conduct a protective check of the property for officer safety reasons but did not enter any buildings. They noticed a strong chemical smell coming from a mobile home on the property, but no CST officer entered the mobile home to secure it due to safety concerns. The Team, including Deputies *1045 Clark and Banach, arrived about one hour later.
¶ 7 When Deputy Clark arrived at the scene, he was briefed by the CST officers, and he and Deputy Banach decided to clear the property for officer safety reasons and to execute a performance safety assessment, "making sure that there is not an active cook or some sort of chemical reaction going on that could erupt into flame or explode." RP (Sep. 1, 2005) at 37. The Team entered the property structures and observed methamphetamine manufacturing evidence in each of them. The officers detected chemical odors emanating from the fifth wheel, mobile home, and shed. They could smell the chemical odor through their respirators, but no one identified the specific smell in their testimony. The team also entered the garage despite the fact that they never smelled chemical odors from outside the garage at any time.
¶ 8 Deputy Clark testified that there was not time to get a search warrant because of the dangers methamphetamine labs pose  he had seen "reactions that have actually exploded or tanks that were leaking with ammonia . . . areas had to be evacuated." RP (Sep. 1, 2005) at 47. He also pointed out that one of the byproducts of the red phosphorous method of manufacture is phosphene gas, which is fatal if inhaled.[2] The officers applied for and obtained a search warrant after the scene was secured.
¶ 9 In April 2005, Leffler was charged with the unlawful manufacture of methamphetamine in violation of RCW 69.50.401(1)(2)(b). He filed a motion to exclude all evidence discovered during the search. After a hearing, the trial court denied the motion. It found that the search was not pursuant to Leffler's probation status and was not a valid protective sweep, but that it was valid under the emergency exception to the search warrant requirement. Further, the court found that the sweep of the garage was not justified, but it concluded that even without the evidence from the garage, the affidavit would have been sufficient for a warrant.
¶ 10 Leffler was convicted after a bench trial on stipulated facts. He was sentenced to 68 months, the low end of the standard range. This appeal followed.

ANALYSIS
¶ 11 In reviewing a trial court's denial of a suppression motion, we review challenged findings of fact for substantial supporting evidence. State v. Lawson, 135 Wash.App. 430, 434, 144 P.3d 377 (2006). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). We review the trial court's conclusions of law de novo. State v. Levy, 156 Wash.2d 709, 733, 132 P.3d 1076 (2006).
¶ 12 Here, Leffler argues that the emergency exception to the warrant requirement was unavailable in this case. Specifically, he claims that (1) the emergency was a pretext for the search, (2) no objective emergency existed, and (3) obtaining a telephonic warrant would have been "very doable." Appellant's Br. at 16.
¶ 13 Warrantless searches of constitutionally protected areas are presumed unreasonable absent proof that one of the well-established exceptions applies. See State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). The State bears the burden of establishing an exception to the warrant requirement. State v. Potter, 156 Wash.2d 835, 840, 132 P.3d 1089 (2006).
¶ 14 Police officers may enter a building without a warrant when facing exigent circumstances (emergency exception). The exception recognizes the "community caretaking function of police officers, and exists so officers can assist citizens and protect property." State v. Schlieker, 115 Wash. App. 264, 270, 62 P.3d 520 (2003). The emergency exception justifies a warrantless search when (1) the officer subjectively believes that someone needs assistance for health or safety reasons, (2) a reasonable *1046 person in the same situation would similarly believe there was a need for assistance, and (3) the need for assistance reasonably relates to the place searched. Lawson, 135 Wash. App. at 434-35, 144 P.3d 377 (citing State v. Kinzy, 141 Wash.2d 373, 386-87, 5 P.3d 668 (2000)). When analyzing these factors, we view the officer's actions as the situation appeared to the officer at the time. Lawson, 135 Wash.App. at 435, 144 P.3d 377 (citing State v. Lynd, 54 Wash.App. 18, 22, 771 P.2d 770 (1989)).
¶ 15 When invoking the emergency exception, the State must show that the claimed emergency is not merely a pretext for conducting an evidentiary search. Schlieker, 115 Wash.App. at 270, 62 P.3d 520 (citing Lynd, 54 Wash.App. at 21, 771 P.2d 770). Generally, we have endorsed an emergency entry where the officers reasonably believed that a specific person or persons needed immediate help for health or safety reasons. Lawson, 135 Wash.App. at 437, 144 P.3d 377; see, e.g., Lynd, 54 Wash.App. at 22-23, 771 P.2d 770 (where a police officer had knowledge of a 911 hang-up call from defendant's home, the phone line remained busy after the 911 call, a domestic violence incident between spouses had just occurred, defendant was loading his things into his vehicle and preparing to leave, and defendant did not want the officer to enter the home to check on his wife, emergency exception justified warrantless entry into defendant's home to investigate the wife's well-being); see also State v. Gocken, 71 Wash.App. 267, 272-77, 857 P.2d 1074 (1993) (the emergency exception justified a warrantless search where police officers entered the defendant's and victim's condominium and kicked in the victim's bedroom door to perform a "routine check on [the victim's] welfare" after reports of decaying flesh odor and reports from family and friends that they had not seen the victim for several weeks). We have been unwilling to extend the doctrine to authorize warrantless entries where the officers express only a generalized fear that methamphetamine labs and their ingredients are dangerous to people who might live in the neighborhood. Lawson, 135 Wash.App. at 438, 144 P.3d 377.
¶ 16 The emergency exception has also been applied to validate police entry based on knowledge that dangerous chemicals exist that may imminently cause harm. State v. Downey, 53 Wash.App. 543, 544-45, 768 P.2d 502 (1989) (ether odor justified warrantless entry under emergency exception). Courts have also extended the emergency exception to the requirement for a search warrant to allow police to enter a building if they reasonably believe persons are in imminent danger of death or harm, or where there are objects likely to burn or explode. State v. Muir, 67 Wash.App. 149, 153, 835 P.2d 1049 (1992).
¶ 17 A survey of Washington law reveals two factors that must be present for the emergency exception to apply. First, there must be a substantial risk of serious injury to persons or property. See Schlieker, 115 Wash.App. at 272, 62 P.3d 520 (emergency exception did not justify warrantless entry where deputies had no information indicating that someone had been injured); Lawson, 135 Wash.App. at 437, 144 P.3d 377 (emergency exception did not justify warrantless search where deputies did not ask about defendant's well-being and had no information that anyone was injured and in need of immediate help); Downey, 53 Wash.App. at 544-45, 768 P.2d 502 (warrantless search justified when premises contain objects likely to burn, explode, or otherwise cause harm).
¶ 18 Ninth Circuit jurisprudence has similarly defined "exigent circumstances" as "those circumstances that would cause a reasonable person to believe that entry . . . was necessary to prevent physical harm to the officers and other persons, the destruction of relevant evidence, the escape of the suspects or some other consequence improperly frustrating legitimate law enforcement officers." United States v. Echegoyen, 799 F.2d 1271, 1278 (9th Cir.1986) (quoting United States v. McConney, 728 F.2d 1195, 1199 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). Under this rule, a substantial risk to persons or property (such as property that contains evidence) is a sufficient *1047 threshold test for application of the emergency exception.[3]
¶ 19 Second, the risk to persons or property must be imminent. See Downey, 53 Wash.App. at 544-45, 768 P.2d 502 (emergency exception applies when entry is based on knowledge that dangerous chemicals exist that may imminently cause harm); State v. Nichols, 20 Wash.App. 462, 465-66, 581 P.2d 1371 (1978) (police must have reasonable grounds to believe there is an emergency at hand, and there must be a reasonable basis to associate the emergency with the area searched).
¶ 20 In sum, the emergency exception only applies where there is an imminent threat of substantial injury to persons or property. The evidence demonstrates no such threat here. The initial response team was clearly concerned for their own safety,[4] but that is insufficient to justify a warrantless search under the emergency exception.
¶ 21 Deputy Greger testified that none of the officers entered any of the buildings on the premises before the Team wearing protective gear. Additionally, Deputy Clark testified that had there been an ongoing chemical reaction, he believed that the resulting fumes would have been a danger to the surrounding area. He also pointed out that he had seen such reactions explode, but he did not testify as to the imminence of this danger.
¶ 22 The deputies had no information indicating the presence of other persons on the property, and no reason to believe that any person or property was under imminent threat of substantial harm. While these particular circumstances raised valid concerns for officer safety and raised the possibility of toxic gas release, fire, and explosion, there is no evidence that any of these threats were imminent. Thus the emergency exception does not apply.
¶ 23 However, the evidence from the search may still be admissible if the search warrant contained sufficient untainted evidence to support a finding of probable cause. See State v. Ross, 141 Wash.2d 304, 315, 4 P.3d 130 (2000); State v. Johnson, 75 Wash. App. 692, 709, 879 P.2d 984 (1994). An affidavit establishes probable cause for a search warrant if it sets forth facts sufficient to allow a reasonable person to conclude there is a probability that the defendant is involved in criminal activity and evidence of that activity will be found at the place to be searched. Ross, 141 Wash.2d at 315, 4 P.3d 130 (citing State v. Young, 123 Wash.2d 173, 195, 867 P.2d 593 (1994)).
¶ 24 The State raised a parallel issue in its response brief by arguing that even if the evidence obtained from the garage was excised the warrant was supported by sufficient untainted evidence to find probable cause to search the entire property. Not until its motion for reconsideration did the State suggest that the warrant may still stand even if more evidence is excised, specifically that evidence obtained from the other structures on the property. Still, the State introduced the logic of their current argument in their opening brief, only failing to apply that logic to a more limited (and more relevant) set of facts.[5] While this argument may have merit, it involves a question *1048 of fact that should first be addressed by the trial court: namely, which areas and buildings would have properly been included in a search warrant based on untainted evidence.
¶ 25 Here, the declaration for determination included the following evidence obtained prior to the warrantless search: (1) the anonymous complaint of chemical smells at Leffler's property, (2) the officers' own observations of strong odors at the property, (3) Leffler's DOC warrant, and (4) Leffler's statements to the officers that there was some muriatic acid and a gasser inside the fifth wheel trailer. Thus, even excluding the evidence found during the search, the redacted affidavit would likely contain ample evidence to support a determination of probable cause.
¶ 26 We therefore remand this matter to the trial court to determine first whether the police would have sought the warrant with only the information they obtained before the search, see State v. Gaines, 154 Wash.2d 711, 719, 116 P.3d 993 (2005); second, whether the State's warrant would have been sufficiently supported with only this evidence; and third, which areas of the property could have been searched on the basis of that evidence. Finally, a factfinder must assess whether sufficient untainted evidence remains to prove Leffler's guilt beyond a reasonable doubt.
I concur: BRIDGEWATER, P.J.
ARMSTRONG, J. (concurring).
¶ 27 I concur in the result. I write separately because the majority repeats our dicta in Schlieker that the emergency exception recognizes the "community caretaking function of police officers, and exists so officers can assist citizens and protect property." Majority at 5. Schlieker repeated the language from State v. Menz, 75 Wash.App. 351, 353, 880 P.2d 48 (1994), where it was also dicta. Menz cited to State v. Swenson, 59 Wash.App. 586, 589, 799 P.2d 1188 (1990), where the court distinguished the exigent circumstances from the emergency doctrine. The court held that the emergency doctrine did not apply where the officers, responding to a neighbor's report that the defendant's front door was open, found the open door, called out to anyone inside and then entered the home where they found marijuana. The court held that the emergency doctrine did not apply because the officers had no reason to believe that anyone in the home was injured or that anyone in the vicinity was acting inappropriately. Swenson, 59 Wash. App. at 590, 799 P.2d 1188. Thus, no Washington case has held that officers may enter a home under the emergency doctrine merely to protect property. And we should not further erode federal and state constitutional protections again unlawful searches by repeating the "protect property" language from Schlieker, Menz, and Swenson. The emergency doctrine applies only where the entering officer subjectively believes that "someone likely need[s] assistance for health or safety reasons." Schlieker, 115 Wash.App. at 270, 62 P.3d 520.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 444, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In their search of Leffler's property, Deputies Clark and Banach discovered evidence of two methods of methamphetamine manufacture  the lithium anhydrous ammonia method and the red phosphorus iodine method.
[3] The Tenth Circuit also allows application of the emergency exception where there is risk to persons or property  specifically, where "the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others." United States v. Rhiger, 315 F.3d 1283, 1288 (10th Cir.), cert. denied 540 U.S. 836, 124 S.Ct. 90, 157 L.Ed.2d 65 (2003) (quoting United States v. Wicks, 995 F.2d 964, 970 (10th Cir.), cert. denied, 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993)).
[4] The trial court found that Deputy Greger called the Team to the property out of concern for officer safety, and Leffler did not assign error to this finding. Findings of fact to which error has not been assigned become verities on appeal. State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003).
[5] It is well within our discretion to decline to address arguments not raised in the opening brief. See RAP 10.3; Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992); Conrad v. Alderwood Manor, 119 Wash.App. 275, 297, 78 P.3d 177 (2003). Regardless, we choose to address the State's argument here due to its partial appearance in the State's opening brief and due to its apparent merit.