[No. 47264–5.   En Banc.   May 28, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR
L. CHRISTIAN, JR., *Petitioner.*

*Gary C. Hugill,* for petitioner.

*C. J. Rabideau, Prosecuting Attorney,* and *Pamela Cameron, Deputy,* for respondent.

STAFFORD, J.—Arthur Christian, Jr., appealed a conviction of unlawful possession of a controlled substance. The sole issue present in the petition for review is whether the trial court erred in denying Christian's motion to suppress evidence seized from his apartment during a warrantless search. We affirm the trial court and the Court of Appeals.

▇ The findings of fact entered following the suppression hearing are not challenged. Thus, we accept them as verities on appeal. *Riley v. Rhay,* 76 Wn.2d 32, 454 P.2d 820, *cert. denied,* 396 U.S. 972, 24 L. Ed. 2d 440, 90 S. Ct. 461 (1969).

The findings establish that sometime in May of 1978 Christian and his brother decided to vacate Christian's apartment and so notified the apartment house manager. The rent had been paid to midnight May 31. The manager told Christian to vacate the apartment before noon June 1 and leave his keys on the kitchen table. Although Christian requested a longer time and asked to give the keys directly to the manager, the manager did not agree. Christian knew the manager intended to enter and clean the apartment before noon June 1.

On May 31 Christian and his brother obtained a truck and continued removing their personal property. By that night most of their belongings had been removed. The manager observed Christian and his brother moving items out of the apartment on the night of the 31st and concluded they had vacated the apartment as ordered.

Thereafter, at approximately noon on June 1, the manager entered to clean the apartment for re–rental as he had informed Christian he would. Upon entering he observed no personal belongings in the living room, but did find a set of beam–type scales on the kitchen table. When he looked in the refrigerator he found a white powder in plastic bags as well as two hypodermic needles. Suspecting the bags contained drugs, he contacted Lieutenant Butner of the police department shortly after noon and informed him substantially of all the foregoing events. He also informed Lt. Butner he was of the opinion Christian and his brother had vacated the apartment. His description of the scales and white powder in plastic bags was consistent with a suspected presence of narcotics and controlled substances.

The manager asked Lt. Butner to accompany him to the apartment and dispose of the drugs. Upon reaching the apartment, they found the door was locked. The manager knocked on the door and, after receiving no answer, used his passkey to enter the front door which opened into the living room area. Lieutenant Butner and another officer were admitted and upon entering noted no furniture in the living room or within view which appeared to belong to other than the apartment owners. Lieutenant Butner observed a pair of dirty, worn coveralls lying across the sofa. The lieutenant went directly to the kitchen, opened the refrigerator and removed two cellophane bags containing white powder. A field test revealed they contained cocaine.

The trial court made three additional critical unchallenged findings of fact. First, Christian's tenancy expired as of midnight May 31; he did not intend to continue the tenancy; and Christian "did know that the manager . . . intended to enter said apartment and clean the apartment before noon of June 1, 1978." Second, "the manager . . . acted reasonably and in the good faith belief that the defendant and his brother had vacated the apartment at the time he requested the officers to enter the apartment to remove the suspected narcotics or drugs." Finally, "Lt.

Butner acted reasonably and in good faith in relying upon the information supplied to him by . . . the . . . manager, to the effect that the tenancy had been terminated as of midnight, May 31, 1978, and that the occupants of the apartment had vacated the apartment by noon of June 1, 1978."

Although not in the findings, the record indicates Christian and his brother returned while the manager and the police were in the apartment. Further, after the refrigerator had been entered the officers saw a few other personal items in the apartment but no search was made of the apartment.

In light of the foregoing, the trial court refused to suppress the scales and narcotics, holding the entry of the apartment by the officers and subsequent seizure of the controlled substance was not unreasonable or in violation of the fourth amendment to the United States Constitution, or article 1, section 7 of the State Constitution.[1]

Christian contends the trial court erred by failing to suppress evidence seized from the apartment in the warrantless search made without his consent. The Court of Appeals affirmed the trial court. We in turn affirm the Court of Appeals.

Many "facts" relied on by Christian run counter to the trial court's findings of fact. While there is testimony to support his version of certain events, the trial court chose not to believe it, adopting quite different findings. Since Christian did not assign error to the trial court's findings of fact, we accept them as verities on review. *Riley v. Rhay, supra.*

The sole issue is whether, under the facts of this case, the warrantless search and seizure was reasonable. We

---

[1] It is of interest that at the suppression hearing, Christian denied knowledge of the drugs found in the refrigerator, how they got there or who might own them. Further, at the subsequent trial he denied ownership of the scales, testified he had found them in the closet and that he intended to throw them in the garbage. Finally, he denied knowledge of the drugs, how they got in the apartment or the refrigerator and denied ownership of the drugs or knowledge of who did.

hold it was. The test for determining whether the Fourth Amendment applies is first whether "a person [has] exhibited an actual (subjective) expectation of privacy and, second, [whether] that . . . expectation [is] one that society is prepared to recognize as 'reasonable.'" *Katz v. United States,* 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring).

▮ Given the peculiar unchallenged facts of this case, we are compelled to hold Christian had no reasonable expectation of privacy. He had decided to terminate the tenancy a considerable time earlier; his rent was not paid; he had informed the manager of his intent to terminate the tenancy as of midnight May 31; his request for additional time to move was denied and Christian was informed by the manager that he would enter and clean the apartment before noon June 1; Christian was told to leave the apartment keys on the kitchen table; and Christian removed most of his belongings from the apartment on May 31. While it is likely Christian retained some privilege to remove his personal belongings from the apartment, he could not reasonably have expected to retain exclusive control over the apartment under the attendant circumstances. It should have been no surprise to Christian that the manager entered the apartment before noon on June 1 pursuant to the prior oral notice. Whatever subjective expectation of privacy Christian might have claimed, under these circumstances it was not objectively reasonable. *State v. Dougherty,* 8 Or. App. 267, 493 P.2d 1383 (1972); *see also United States v. Cook,* 530 F.2d 145 (7th Cir. 1976).

▮ Christian also argues that the manager had no authority to consent to the search and seizure because Christian remained in possession of the premises. Although a landlord may not consent to a search and seizure on behalf of a tenant where the tenant is in undisputed possession of the property, *Stoner v. California,* 376 U.S. 483, 11 L. Ed. 2d 856, 84 S. Ct. 889 (1964); *Chapman v. United States,* 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776 (1961), there was no "sole" or "undisputed possession" in the

instant case. While the manager may not have possessed a full "common authority" over the premises, in the strict sense, he did have a "sufficient relationship to the premises . . . sought to be inspected" to give consent to enter within the purview of *United States v. Matlock,* 415 U.S. 164, 171, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). As pointed out by *Matlock,* at 171 n.7:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third–party consent . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes, so that it is *reasonable to recognize* that any of the coinhabitants has the right to permit the inspection in his own right and *that the others have assumed the risk* that one of their number might permit the common area to be searched.

(Italics ours.) *United States v. Cook, supra,* interpreted the foregoing footnote to place the focus of the analysis on whether there was an *assumption of risk* that the other party would exercise his or her right to enter upon and inspect the premises and permit others to do so. The focus was not on whether there was actual use or joint control for most purposes.

Clearly, under the narrow facts of this case, Christian assumed such a risk. Even though he knew the manager planned to enter the apartment before noon on June 1, he did not return to the apartment until well after noon. Thus, Christian assumed the risk that the manager would act reasonably and do as he said he would, *i.e.,* he would enter the apartment before noon June 1 to clean it for rental. Christian also assumed the concomitant risk that upon entering the apartment the manager would find the illegal drugs and, acting reasonably, would report their existence to the police. *See United States v. Cook, supra* at 148–49. This is particularly true since the actions of the manager and reliance by the police were reasonable and done in good faith, according to the unchallenged findings of fact.

We hold that, under the facts of this case, the manager

had sufficient relationship to the apartment to give consent to its inspection. We also hold that Christian did not have a reasonable expectation of privacy, under the attendant circumstances, and assumed the risk that, absent his "sole control" or "undisputed possession" over the premises, the manager would, acting reasonably, enter and give consent to a police inspection of the apartment.

We affirm the trial court and the Court of Appeals.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.