[No. 21651–1–I.   Division One.   May 1, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. JESSE RAYMOND LYND, *Appellant.*

*Timothy L. Sell* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jonathan Love* and *Craig Peterson, Deputies,* for respondent.

WINSOR, J.—Jesse Raymond Lynd appeals from his judgment and sentence for a Uniform Controlled Substances Act violation. Lynd contends the trial court erred in refusing to suppress evidence seized as the result of a warrantless search. We affirm.

On February 28, 1987, Officer Linda Hall of the King County police department was dispatched to investigate a 911 hang–up call made from a telephone at Lynd's address.[1] Before proceeding to the Lynd home, Hall called the number from which the call originated and received a busy signal.

When Hall reached Lynd's residence she found Lynd outside, loading things into an automobile "as if he were going to leave". Hall noticed a recently inflicted cut on Lynd's face. Hall questioned Lynd, who explained that he and his wife had argued, and that he had been cut when she hit him in the face. Lynd admitted to Hall that during the argument he pushed his wife to the floor, sat on her, and slapped her. Lynd also said that after the argument, Mrs. Lynd left the house and went to her mother's, "right down the street." Hall asked for permission to enter Lynd's home to look for Mrs. Lynd. Lynd refused.

Without first attempting to look inside the residence, contact Mrs. Lynd at her mother's, or obtain a search warrant, Hall entered Lynd's residence. She immediately found evidence of a struggle, *e.g.*, broken dishes and parts of a broken telephone. Hall searched the house, but did not find Mrs. Lynd. Hall did, however, discover evidence indicating the presence of a marijuana grow operation.

Based on Hall's discovery, narcotics detectives obtained a search warrant for Lynd's home and recovered over 1,000 grams of marijuana and marijuana growing paraphernalia. Lynd was charged with possession of marijuana with intent to manufacture or deliver in violation of RCW 69.50.401(a).

---

[1] A 911 hang–up call is one in which the caller hangs up before explaining why he or she called 911.

Lynd moved to suppress evidence seized as a result of Hall's warrantless search. At the suppression hearing Hall testified that:

> I could see that [Lynd] at least was injured, and he said that an argument had occurred, I had to check to see that she wasn't injured inside the house.
>
> . . .
>
> . . . He was injured and he admitted to an argument. It is very possible that she was injured and even more severely, because he is a big guy.

Based on this testimony, the trial court found as fact that:

> At all times Officer Hall was concerned about the safety of Mrs. Lynd. Officer Hall feared, based on defendant's injuries, his statements, and his reluctance to allow her to enter the residence, that Mrs. Lynd could need medical assistance as a result of domestic violence.

The trial court also found that Hall had no knowledge Lynd was growing marijuana until she actually entered the residence. The court concluded that Hall's entry into Lynd's residence was reasonable and justified under the exigent circumstances exception to the warrant requirement, and denied Lynd's motion to suppress. Lynd stipulated to the facts contained in the police reports and the trial court found him guilty as charged.

Warrantless searches are per se unreasonable, *Katz v. United States,* 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *State v. Chrisman,* 100 Wn.2d 814, 817, 676 P.2d 419 (1984). An emergency situation, however, can justify a warrantless search. 2 W. LaFave, *Search and Seizure* § 5.4(c) (2d ed. 1987). For example, when premises contain persons in imminent danger of death or harm; objects likely to burn, explode or otherwise cause harm; or information that will disclose the location of a threatened victim or the existence of such a threat, police may search those premises without first obtaining a warrant. Utter, *Survey of Washington Search and Seizure Law: 1988 Update,* 11 U. Puget Sound L. Rev. 411, 538–39 (1988); *see State v. Loewen,* 97 Wn.2d 562, 568, 647 P.2d 489 (1982) (medical emergency); *State v. Downey,* 53 Wn. App. 543, 544–45, 768 P.2d 502

(1989) (overpowering ether odor); *State v. McAlpin,* 36 Wn. App. 707, 716, 677 P.2d 185 (search for missing gun), *review denied,* 102 Wn.2d 1011 (1984); *see also State v. Bakke,* 44 Wn. App. 830, 833–34, 837–38, 723 P.2d 534 (1986) (burglary in progress), *review denied,* 107 Wn.2d 1033 (1987); *State v. Nichols,* 20 Wn. App. 462, 465–66, 581 P.2d 1371 (1978) (fight in progress reported); *State v. Sanders,* 8 Wn. App. 306, 310–11, 506 P.2d 892 (1973) (entry in response to emergency call and officer's observation of suspicious activity).

In order for a search to come within the emergency exception, we must be satisfied that the claimed emergency was not simply a pretext for conducting an evidentiary search and instead was "actually motivated by a perceived need to render aid or assistance." *Loewen,* 97 Wn.2d at 568. To that end, the State must show that: (1) the searching officer subjectively believed an emergency existed; and (2) a reasonable person in the same circumstances would have thought an emergency existed. *Loewen,* 97 Wn.2d at 568; *Downey,* 53 Wn. App. at 545; *McAlpin,* 36 Wn. App. at 716. In addition, there must be some reasonable basis to associate the emergency with the place searched. *Nichols,* 20 Wn. App. at 466.

Lynd's challenge focuses on the objective reasonableness of Hall's search.[2] He contends that a reasonable person in the same circumstances would have sought additional information before making a warrantless search. Lynd argues that before entering the dwelling, Hall should have attempted to contact Mrs. Lynd at her mother's, look into the windows of the Lynd home, or at least knocked and called out for Mrs. Lynd.

Lynd relies on several cases which, he contends, establish that a warrantless emergency search is justifiable only when

---

[2]The subjective component of a reasonable emergency search is satisfied by the trial court's unchallenged findings that Hall feared Mrs. Lynd might need medical assistance, and that Hall had no knowledge of Lynd's marijuana grow operation until she entered Lynd's residence. Unchallenged findings of fact are verities on appeal. *State v. Christian,* 95 Wn.2d 655, 658, 628 P.2d 806 (1981).

officers face a genuine threat to police or public safety, or after officers have taken measures to verify that an emergency probably exists. *See, e.g., United States v. Booth,* 455 A.2d 1351 (D.C. 1983) (warrantless entry justified when party answering the door to address at which an assault in progress was reported denied an altercation had occurred, but had blood on his nose); *State v. Monroe,* 101 Idaho 251, 611 P.2d 1036 (1980) (discovery of a body in defendant's car, and bloodstains and a spent bullet outside defendant's house justified a warrantless entry), *vacated on other grounds,* 451 U.S. 1014, 69 L. Ed. 2d 385, 101 S. Ct. 3001 (1981), *rev'd on other grounds,* 103 Idaho 129, 645 P.2d 363 (1982); *State v. Sanders, supra* (officers knocked and looked into windows before entering apartment). These cases, which differ factually from the instant case, are inapposite.

The determination of whether an emergency situation justifies a warrantless search is necessarily tied to the individual facts of each case. "It is manifest that the emergency nature of each situation must be evaluated on its own facts." *People v. Duncan,* 42 Cal. 3d 91, 103, 720 P.2d 2, 227 Cal. Rptr. 654, 660 (1986). *See also Wayne v. United States,* 318 F.2d 205, 212 (D.C. Cir.) (warrantless entry not illegal if reasonable in the circumstances), *cert. denied,* 375 U.S. 860, 11 L. Ed. 2d 86, 84 S. Ct. 125 (1963). Whether a police officer's acts in the face of a perceived emergency were objectively reasonable is a matter to be evaluated in relation to the scene as it reasonably appeared to the officer at the time, "not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *Bakke,* 44 Wn. App. at 837 (quoting *Commonwealth v. Young,* 382 Mass. 448, 456, 416 N.E.2d 944, 950 (1981)).

Here, Hall knew that: a 911 hang–up call had originated from a telephone in Lynd's home; the telephone remained busy after the 911 call terminated; an incident of domestic violence involving Lynd and his wife had just occurred; Lynd was loading things into an automobile as if he were preparing to leave; and Lynd did not want Hall to enter his

home to search for Mrs. Lynd. Given this information, it was reasonable for Hall to fear that Mrs. Lynd remained inside, injured. Therefore, entering Lynd's home without first securing a warrant, verifying the accuracy of Lynd's story concerning Mrs. Lynd's whereabouts, or taking other preliminary measures was also reasonable. We agree with the trial court that in these circumstances, "Hall would have been derelict in her duty as a police officer in not entering the residence to check on Mrs. Lynd."

The judgment and sentence are affirmed.

COLEMAN, C.J., and PEKELIS, J., concur.

Reconsideration denied June 13, 1989.