[No. 12165-4-II. Division Two. September 28, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. HOWARD H. YODER, *Appellant.*

*Craddock D. Verser, Public Defender,* for appellant.

*John F. Raymond, Prosecuting Attorney,* and *Steven L. Olsen, Deputy,* for respondent.

Petrie, J.*—Howard H. Yoder appeals a judgment and sentence imposed following his conviction at a bench trial of the crime of unlawful possession of a controlled substance, marijuana, with intent to manufacture. RCW 69.50-.401. On appeal, he contends the trial court erred by admitting into evidence (1) several marijuana plants the police seized from his kitchen; and (2) his admission to the police that the plants seized were his. In both instances, he contends, the police obtained the evidence as a result of an unlawful warrantless search of his residence.

In addition, he assigns error to the suppression hearing court's finding of fact that the police had been advised by his girl friend's daughter that he "was beating her mother up." We consider this latter matter a nonissue in this appeal. The record clearly indicates that the police were advised that defendant was "assaulting" his girl friend. We accept the generic term, assault, in lieu of the court's more specific terms which indicate a physical "beating." As to the other issues, we find no error and affirm the judgment and sentence.

With the one exception noted above, the suppression hearing court's findings of fact are unchallenged. We accept them as verities. *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981). Indeed, the essential facts presented to the suppression hearing court are undisputed.

Howard Yoder and his girl friend, Georgia Kirley, shared a residence in Quilcene, Washington. Kirley's teenage

---

*This appeal was heard by one Supreme Court Justice and two retired judges of the Court of Appeals, sitting as Judges Pro Tempore of the Court of Appeals in Division Two, pursuant to CAR 26.

daughter, Tricia Benson, had her own bedroom in the Yoder–Kirley residence. Jefferson County sheriffs knew that there was a history of violent domestic disputes between Yoder and Kirley.

Shortly before midnight on April 6, 1988, Tricia telephoned the Jefferson County Sheriff. The dispatcher responded to her call. He testified at the combined CrR 3.5–3.6 hearing that Tricia told him "that Georgia Kirley, her mother, was being assaulted by Howard Yoder." During the course of a 20–minute phone conversation, he talked to Ms. Kirley who, he testified, "seemed pretty adamant to have an officer come out and she was quite upset." In addition, he also talked to a neighbor, Jack Gordy, who had come to the Yoder–Kirley residence, and who "was very adamant that a deputy needed to respond" to the "assaultive situation." The dispatcher concluded that the matter was "an endangering situation" because, among other indications, in his words, "I could hear a lot of extreme tense yelling in the background . . . it was a potentially violent situation." As a result, he sent Deputy Sheriffs Robert Klatt and Robert Haines to the scene.

When Klatt and Haines arrived at the residence shortly thereafter, Yoder was at the threshold of the open front door and Kirley and Tricia were in the living room visible through the open front door. Klatt observed that Kirley was "visibly upset." Haines talked to Yoder outside the house and advised him of his constitutional rights. Yoder agreed to discuss the complaint. Thereafter Yoder and Haines remained outside.

Klatt entered the residence to investigate the report. He knew, from having investigated prior complaints involving the same parties, that "there was a lot of talking that was going to have to be done." Kirley told Klatt that "Howard had not hit me." Nevertheless, she appeared "quite upset and really wasn't in the mood to talk about what was going on." He then asked Tricia to accompany him to her bedroom, where she stated that "Yoder had assaulted her mother and that the fight had been going on for quite a

while." Tricia advised that Jack Gordy had also been a witness to the altercation. Klatt then went back through the living room to the kitchen to speak to Gordy, who was then speaking on the telephone.

Upon entering the kitchen, Klatt observed two marijuana plants that he immediately recognized as such by virtue of his training and experience. Yoder was confronted with this discovery and reminded of his rights. Yoder admitted that the plants were his.

Yoder then gave written consent to search his residence after being advised that he had a right to refuse such consent. The deputies did not make any promises or threats to Yoder to induce either his statements or his consent to search. Kirley then also consented to a search of the residence, after being shown Yoder's signed consent and after being told that marijuana had been found and that the deputies did not need her consent. During the search, the deputies found several more growing marijuana plants and marijuana growing equipment.

Yoder's essential position on appeal is that the deputies' search of his residence and their seizure of the several marijuana plants and his subsequent admission to the deputies all resulted from an illegal warrantless search of his residence. We hold otherwise.

██ The State has the burden of showing that a warrantless search or seizure falls within an exception to the general requirement of a warrant. *State v. Chrisman*, 100 Wn.2d 814, 676 P.2d 419 (1984); *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980). We hold that Deputy Klatt's warrantless discovery of the marijuana plants was proper under the doctrine of plain view. The elements of the plain view doctrine are (1) prior justification for the intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by police that they have evidence of a crime before them. *Chrisman*, 100 Wn.2d at 819.

The last two elements are obviously satisfied. The discovery was inadvertent because Deputy Klatt went into the

kitchen in pursuit of his investigation of the complaint of domestic violence to talk to a witness, not to search for evidence of another crime. Further, Deputy Klatt immediately observed the plants and had immediate knowledge, by virtue of his training and experience, that he was observing evidence of a crime. Thus, the only element of the plain view doctrine that is not clearly satisfied is that of prior justification.

■ Simply stated, Deputy Klatt's entry into the residence was merely an entry upon implied consent of two of the residents in aid of his statutory duties under this State's domestic violence law. RCW 10.99.030 imposes upon police investigating a reported domestic violence the duty "to protect the complaining party" and to "take a complete offense report including the officer's disposition of the case."

When Klatt arrived, the front door of the residence was open and both Kirley and Tricia were visible within. Deputy Klatt did only that which the women had requested when registering their complaint. His entry through the open front door was within the scope of the consent earlier given by Kirley and Tricia. In so doing, he was simply giving effect to the purpose for which they had given their consent, *i.e.*, to protect Ms. Kirley and "to calm the situation." Furthermore, although to all outward appearances, the violence had subsided temporarily (due undoubtedly to the presence of the officer), the history of complaints of domestic violence between these two parties known to the police warranted Klatt's entry through the open door to discuss the situation with Ms. Kirley. The potential outbreak of a more explosive situation still existed. *See State v. Lynd*, 54 Wn. App. 18, 771 P.2d 770 (1989).

Once validly in the house, and having been told by Kirley that Yoder had not struck her, he was obliged to turn to the daughter, Tricia. Indeed, under the circumstances, he had to discuss the situation with Tricia outside the presence of her mother who, by now, had apparently reported to the police two different versions of the evening's events.

We have no difficulty concluding that Tricia accompanied Klatt voluntarily to her bedroom, a place where she might be considered as having exclusive possession. In any event, her initiation of the emergency call indicates a continuing grave concern for her mother's welfare. Deputy Klatt lawfully entered Tricia's bedroom where she told him, not only that the "fight" had been lengthy, but also that Jack Gordy, who was then in the kitchen, was also a witness to the assault.

At that point, Klatt had to make a decision. Should he arrest Yoder, and thus remove him from the scene? Should he accept Kirley's latest version of events? He was lawfully in the house. No one had given any indication that he should leave, and he had received two contradictory versions of the events. His most reasonable decision was to talk to the neighbor, Jack Gordy.

When he walked into the kitchen, he spotted the marijuana plants and immediately recognized them as such. We have previously held that when a police agent is lawfully in a household and walks "through the living room" in pursuit of a criminal investigation, he does so with consent of the householder whom he accompanies. *State v. Sabbot,* 16 Wn. App. 929, 561 P.2d 212 (1977). We justified that entry by declaring, "If a householder is in a position to communicate his refusal of admittance and circumstances leading to and surrounding his entry without a warrant are such that a police officer can reasonably conclude he is not being refused entry, then no invitation, express or implied, is necessary to make the officer's entry lawful." *State v. Sabbot,* 16 Wn. App. at 937–38.

In the case at bench, Klatt was lawfully in the house, and the totality of circumstances were such that he could reasonably conclude his entry into the kitchen was not being refused. We hold that Klatt entered the kitchen lawfully.

Accordingly, Klatt met all the prerequisites to seize the marijuana plants. Furthermore, it follows that the deputies' subsequent seizure of additional marijuana (by written consent of Yoder) and Yoder's admission to ownership of

the plants were not tainted by any initial illegal seizure of the plants in the kitchen.

The suppression hearing court properly denied Yoder's motions to suppress the evidence obtained by Klatt and Haines.

Judgment and sentence are affirmed.

ARMSTRONG and PEARSON, JJ. Pro Tem., concur.