[No. 25132-9-II.   Division Two.   January 19, 2001.]

THE STATE OF WASHINGTON, *Appellant*, v. VELVET FAYE GIBSON, *Respondent*.

*Susan I. Baur, Prosecuting Attorney*, and *Edwin N. Norton, Deputy*, for appellant.

*Thomas A. Ladouceur*, for respondent (appointed counsel for appeal).

ARMSTRONG, C.J. — Police responded to a report that a babysitter was smoking marijuana. The officers spoke with Velvet Gibson and entered her house, where they found marijuana. They told Gibson that it would be in her best interest to produce any additional drugs. After she disappeared for a few minutes, an officer, concerned because

Gibson appeared to be under the influence of drugs, stepped into the hallway to look for her. He saw her kneeling in a bedroom with her hands out of view. Upon entering the room, the officer found Gibson emptying bags of marijuana. The trial court granted a motion to suppress the bags of marijuana but not the initial marijuana. The State appeals; Gibson cross-appeals. We reverse the order suppressing the bags of marijuana.

## FACTS

In April 1999, Officer Cowan and Sergeant Dieter responded to a report that Velvet Gibson was smoking marijuana at her home while she was baby-sitting. The officers knocked on Gibson's door, and she came out onto the porch and shut the door behind her. The officers saw a child inside the residence. According to Officer Cowan, Gibson appeared tired, her eyes were "droopy," and her pupils were dilated. Sergeant Dieter could smell both burnt and freshly harvested marijuana; he thought Gibson was under the influence of a controlled substance. Gibson admitted to the officers that she had been smoking marijuana. The officers entered the home after telling Gibson they were going in to ensure the children's safety.

Gibson showed the officers to a back bedroom where they found marijuana smoking pipes and some marijuana. In another bedroom, they found an infant. After returning to the living room, the officers told Gibson they would cite her for marijuana possession. Officer Cowan suggested that Gibson should give them any additional drugs in the house so Child Protective Services would be more likely to let her keep her children. The officers told Gibson they would arrange for child care, and Sergeant Dieter began making these arrangements. Gibson was upset and wandering in and out of the living room.

After Gibson had been away from the living room for three to five minutes, Officer Cowan became concerned. He stepped into the hallway and could see Gibson bent over in

a bedroom with her hands out of view. Cowan thought Gibson was under the influence of marijuana and might have a weapon. He entered the bedroom and saw Gibson emptying marijuana from bags into a pile.

Gibson moved to suppress all of the evidence. The trial court concluded that the officers' initial entry into the home was justified under the emergency exception because of their concern for the children's safety. But the trial court concluded that the exigency ended when the officers found the first batch of marijuana and secured the children. The court concluded that Officer Cowan had a legitimate concern for Gibson while she was away from the living room. But noting Officer Cowan's failure to call Gibson back to the living room before he went looking for her, the court ruled that "there was no exigency sufficient to justify . . . following [her] down the hallway and into the bedroom."

## ANALYSIS

■■ Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution prohibit unreasonable searches and seizures. *State v. Davis*, 86 Wn. App. 414, 420, 937 P.2d 1110 (1997). Warrantless searches are per se unreasonable, but the requirement for a warrant is subject to narrowly drawn exceptions. *Davis*, 86 Wn. App. at 420. The emergency exception recognizes the "community caretaking function of police officers, and exists so officers can assist citizens and protect property." *State v. Menz*, 75 Wn. App. 351, 353, 880 P.2d 48 (1994); *Davis*, 86 Wn. App. at 420.

■■ But when the State invokes the emergency exception, "we must be satisfied that the claimed emergency was not simply a pretext for conducting an evidentiary search[.]" *State v. Lynd*, 54 Wn. App. 18, 21, 771 P.2d 770 (1989). Thus, the exception may be invoked only when

(1) the officer subjectively believed that someone likely needed assistance for health or safety reasons; (2) a reasonable person in the same situation would similarly believe that there was a

need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place searched.

*State v. Gocken*, 71 Wn. App. 267, 276-77, 857 P.2d 1074 (1993). And the officer must be able to articulate facts and reasonable inferences that justify the warrantless search. *Davis*, 86 Wn. App. at 420.

"But a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation' . . . ." *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978) (quoting *Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Thus, officers conducting a search under the emergency exception may not exceed "the scope of a reasonable search to effectuate the purpose of the entry." *State v. Bakke*, 44 Wn. App. 830, 841, 723 P.2d 534 (1986). We hold that the officers here were justified in entering the home and looking for Gibson after she disappeared for several minutes.

The State relies upon *State v. Angelos*, 86 Wn. App. 253, 255, 936 P.2d 52 (1997). There, Officer Isaacson responded to a report that Angelos had overdosed on drugs. Officer Isaacson arrived at Angelos' apartment and entered the living room with emergency medical technicians. The officer overheard Angelos telling a medical technician that she had ingested cocaine through her nose and that her 12-year-old daughter and two friends were at the apartment. Officer Isaacson found the daughter in her bedroom; the girl said that she "felt her mother had a prescription drug problem." *Angelos*, 86 Wn. App. at 255. Officer Isaacson asked her to look and see if any drugs were left out. She did so and reported that she found something in the bathroom. She took Officer Isaacson to the bathroom, where he found cocaine. *Angelos*, 86 Wn. App. at 255.

The *Angelos* court upheld the initial entry into the apartment under the emergency exception even though medical personnel were already treating Angelos. *Angelos*, 86 Wn. App. at 257-58. The court reasoned that an officer's services might reasonably be "useful in coping with any circumstances, such as the presence of youngsters, that

might otherwise be distracting to the medical technicians." *Angelos*, 86 Wn. App. at 258. The court noted that the officer's initial justification for entering the apartment did not necessarily justify entering the bathroom once he knew Angelos was receiving medical treatment. *Angelos*, 86 Wn. App. at 258. But the court held that "[t]he emergency nature of each situation must be evaluated on its own facts, and in relation to the scene as it reasonably appeared to the officer at the time." *Angelos*, 86 Wn. App. at 258. The court upheld the bathroom search even though it was inconsistent with the motive of rendering assistance to Angelos because it was "entirely consistent with the officer's primary motive of protecting the three girls." *Angelos*, 86 Wn. App. at 257. Further, "[b]ecause the officer knew the mother had just overdosed, his immediate concern that drugs of some kind might be lying about in easy reach was fully justified." *Angelos*, 86 Wn. App. at 257.

■■ Gibson attempts to distinguish *Angelos*, arguing that the emergency situation here was less urgent. She points out *Angelos* had overdosed on drugs, while she had merely used marijuana in the presence of minor children and was under the influence of that drug. She contends that the officers should have called for the children to step out of the house or asked her to bring them out. Gibson also suggests that the officers entered the home to investigate her drug use, not to ensure the children's safety.

But the officers had a legitimate concern for the children's safety. When they first entered the home, Gibson led the officers to a back bedroom and showed them some marijuana. During this time they also found the children and began arranging to get them out of the home. And even though Gibson had not overdosed like the defendant in *Angelos*, she was still under the influence of marijuana. The officers had a legitimate concern that she was unfit to care for the children and that the children may have had access to or been exposed to drugs.

And, as in *Angelos*, the officers' concerns continued even though the situation was at least partially under control.

When Officer Cowan went looking for Gibson, she had been out of sight for three to five minutes. Officer Cowan knew that Gibson was distraught and under the influence of marijuana. The children were still in the house. Officer Cowan was concerned for the safety of everybody in the house. When he saw Gibson bent down with her hands out of view, he approached to investigate and discovered the second batch of marijuana. We hold that Officer Cowan was justified in conducting this second limited search because the exigent circumstances had not ended.

Furthermore, Officer Cowan did not have to call Gibson before he went looking for her. Gibson appeared to be under the influence of drugs. Whether she would have even answered a call is questionable. Of greater concern, she may have responded to such a call by doing something to harm herself, the children, or the officers. Finally, the trial court did not find that Officer Cowan searched for Gibson as a pretext to investigate the drug charge. The test is whether the exigent circumstances were continuing and, if so, whether the officer's conduct was aimed at controlling these circumstances. Here both parts of the test are satisfied.

We affirm Gibson's conviction of possession of the first batch of marijuana. We reverse the order suppressing the second batch of marijuana and remand for trial.[1]

HOUGHTON and HUNT, JJ., concur.

---

[1] We recognize the potential "unit of prosecution" issue that may arise on remand. *See State v. Adel*, 136 Wn.2d 629, 965 P.2d 1072 (1998). But that issue has been neither briefed nor argued to this court; thus, we do not address it.