144 P.3d 377 (2006)
STATE of Washington, Respondent,
v.
Kevin Bert LAWSON, Appellant.
No. 33401-1-II.
Court of Appeals of Washington, Division Two.
October 10, 2006.
*378 Bryan G. Hershman, Tacoma, WA, for Appellant.
Michelle Hyer, Pierce County Prosecutor, Tacoma, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Kevin Bert Lawson appeals his conviction of manufacturing methamphetamine, arguing that the trial court should have suppressed evidence obtained during an unconstitutional warrantless search of a shed on his property. Because the State did not show that the officers faced exigent circumstances justifying a warrantless search, we reverse.

FACTS
¶ 2 Pierce County Sheriff's Deputies Eldridge and Mundell responded to a call from an anonymous citizen reporting a strong chemical, ammonia-like smell coming from Lawson's residence. The caller said that the odor burned her eyes and throat.
¶ 3 When the deputies arrived at the scene, they saw Lawson standing near a shed in his fenced yard. The deputies called Lawson to the fence and explained that they were there to investigate the odor. The deputies asked Lawson if the house was his and if they could search the shed. Lawson said yes and invited them in.
¶ 4 Deputy Eldridge entered through the fence gate and immediately walked toward the shed. Neither Deputy Eldridge nor Deputy Mundell advised Lawson of his Ferrier[1] warnings. As Deputy Eldridge approached the shed, she smelled a strong chemical odor. She entered the shed and lifted the lid of one of two plastic totes. Inside the tote, Deputy Eldridge saw a grinder with white residue, a glass baking dish with residue, a spatula with residue, and a gallon milk jug containing a blue liquid. She immediately exited the shed and told Deputy Mundell that she had discovered a methamphetamine lab.
¶ 5 The deputies then arrested Lawson, and during a search incident to arrest, Deputy Mundell discovered a small amount of methamphetamine in Lawson's pocket. After Deputy Eldridge read Lawson his Miranda[2] warnings, Lawson told her that he extracted ephedrine to sell and to trade for methamphetamine.
¶ 6 The State charged Lawson with one count of manufacturing methamphetamine and one count of possession of methamphetamine.
¶ 7 The trial court heard Lawson's motion to suppress evidence based on the deputies' alleged violation of the rule announced in Ferrier. After hearing testimony from Deputy Eldridge, Deputy Mundell, and Victoria Lisoski,[3] the trial court ruled that Lawson invited the deputies to look at his shed; that the deputies could smell something before they got into the shed; and that once in the shed, the deputies knew that Lawson had a methamphetamine lab. The trial court ruled that the chemical odor, the anonymous citizen's call, and the objects Deputy Eldridge found in the shed were sufficient to lead a *379 reasonable person to believe that Lawson was engaged in a crime. Finding that there "was a clear and present danger to persons on [Lawson's] property and to the surrounding residents in the neighborhood," the trial court denied Lawson's motion to suppress. Clerk's Papers (CP) at 9. It also ruled that Deputies Eldridge and Mundell were not required to give Ferrier warnings because the deputies were at Lawson's property to investigate a danger to persons on the property and to the surrounding community, and not to gather evidence of illegal drug activity.
¶ 8 After a bench trial on stipulated facts, the trial court found Lawson guilty of manufacturing methamphetamine and not guilty of possessing methamphetamine.

ANALYSIS
1. Standard of Review
¶ 9 In reviewing a trial court's denial of a suppression motion, we review challenged findings of fact for substantial supporting evidence. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the finding. Mendez, 137 Wash.2d at 214, 970 P.2d 722. We review the trial court's conclusions of law de novo. State v. Levy, 156 Wash.2d 709, 733, 132 P.3d 1076 (2006).
2. Warrantless Searches in General
¶ 10 We presume that warrantless searches of constitutionally protected areas are unreasonable absent proof that one of the well-established exceptions applies. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). The State bears the burden of establishing an exception to the warrant requirement. State v. Potter, 156 Wash.2d 835, 840, 132 P.3d 1089 (2006).
3. Community Caretaking/Emergency Exception
¶ 11 Police officers may enter a building without a warrant when facing exigent circumstances (emergency exception). The exception recognizes the "`community caretaking function of police officers, and exists so officers can assist citizens and protect property.'" State v. Schlieker, 115 Wash.App. 264, 270, 62 P.3d 520 (2003) (quoting State v. Menz, 75 Wash.App. 351, 353, 880 P.2d 48 (1994)). The emergency exception justifies a warrantless search when (1) the officer subjectively believes that someone needs assistance for health or safety reasons, (2) a reasonable person in the same situation would similarly believe there was a need for assistance, and (3) the need for assistance reasonably relates to the place searched. State v. Kinzy, 141 Wash.2d 373, 386-87, 5 P.3d 668 (2000) (quoting Menz, 75 Wash.App. at 354, 880 P.2d 48). When analyzing these factors, we view the officer's actions as the situation appeared to the officer at the time. State v. Lynd, 54 Wash.App. 18, 22, 771 P.2d 770 (1989).
¶ 12 Lawson argues that the deputies' warrantless entry into his property did not fall within the community caretaking exception. He assigns error to the trial court's finding that the deputies' primary purpose in visiting Lawson's property was to investigate a possible danger to someone on the property and to people in the surrounding community, and not to search for evidence of illegal drug activity.
¶ 13 The deputies testified that they went to Lawson's house because an anonymous caller had reported a strong ammonia odor and the caller suspected possible drug activity. Deputy Mundell and Deputy Eldridge wanted to "make sure that [Lawson's residence] was safe." Report of Proceedings (Nov. 3, 2004) at 43. But when she arrived at Lawson's house, Eldridge armed herself with a rifle and a handgun because "[people that manufacture methamphetamine] pose hazards to us. . . . [They] don't like to go to jail and sometimes they like to go for handguns and like to take shots at us." RP (Nov. 3, 2004) at 25.
¶ 14 Deputy Eldridge testified that it was important for her to investigate the smell because "[i]t's a danger to public safety . . . [t]here are inhalation hazards. . . . [and][s]ometimes meth labs explode." RP (Nov. 3, 2004) at 7. Deputy Mundell testified *380 that "if you have a lot of houses, one on top of the other and if somebody was producing meth or a byproduct of meth, you're putting a whole bunch of people's lives in danger." RP (Nov. 3, 2004) at 43. But he said that although there were children within a block of Lawson's house, there were no people on the street adjacent to Lawson's house.
¶ 15 When the State invokes the emergency exception, it must satisfy us that the claimed emergency is not merely a pretext for conducting an evidentiary search. Schlieker, 115 Wash.App. at 270, 62 P.3d 520 (citing Lynd, 54 Wash.App. at 21, 771 P.2d 770). In Schlieker, deputies responded to a domestic disturbance call reporting screaming, yelling, and a gunshot at a home. Schlieker, 115 Wash.App. at 267, 62 P.3d 520. When the deputies arrived, the occupants explained that a cigarette lighter had exploded in the clothes dryer. Schlieker, 115 Wash.App. at 267, 62 P.3d 520. The occupants then told the deputies that they suspected drug activity in a trailer the defendants had parked on the property. Schlieker, 115 Wash.App. at 267, 62 P.3d 520. As the deputies approached the trailer to investigate, two individuals ran to a nearby car and drove away from the trailer. Schlieker, 115 Wash.App. at 267, 62 P.3d 520. Concerned that the individuals stole the car and that someone in the trailer might be injured, the deputies entered the trailer. Schlieker, 115 Wash.App. at 267, 62 P.3d 520.
¶ 16 The deputies found the defendants hiding in the trailer, handcuffed them both, and removed them from the trailer. Schlieker, 115 Wash.App. at 267, 62 P.3d 520. The deputies then reentered the trailer and found evidence of methamphetamine manufacture. Schlieker, 115 Wash.App. at 268, 62 P.3d 520. In denying the defendants' motion to suppress, the trial court concluded that the community caretaking exception justified the initial entry. Schlieker, 115 Wash.App. at 269, 62 P.3d 520. On appeal, we found significant that (1) the deputies were not at the trailer out of concern for the defendants' safety, but to investigate trespassing and drug activity allegations; (2) the deputies had no information that someone inside the trailer had been injured; and (3) after finding the defendants unharmed, the deputies did not inquire about their well-being, but handcuffed and arrested them and searched for evidence of criminal activity. Schlieker, 115 Wash.App. at 271-72, 62 P.3d 520. We held that the emergency exception did not justify the warrantless entry because "[t]he deputies' actions and that they did not inquire into the occupants' safety, but instead handcuffed and arrested them, convince us that this was not a circumstance wherein the deputies were attempting to help people who were injured or in danger." Schlieker, 115 Wash.App. at 272, 62 P.3d 520.
¶ 17 We find Schlieker persuasive. Although, the deputies here did not handcuff Lawson before searching the shed, neither did they ask about his health or well-being. Also, similar to Schlieker, the deputies had no information that anyone on Lawson's property, particularly in the shed, was injured or in need of immediate help; and the 911 call did not report that anyone on Lawson's property was injured or in need of immediate help. Significantly, the trial court did not find that the deputies subjectively believed that someone on the property or nearby needed help for health or safety reasons. See Schlieker, 115 Wash.App. at 271, 62 P.3d 520. Rather, the trial court focused on the deputies' purpose of "investigating a potential danger to the community, and not . . . to gather evidence of illegal drug activity." CP at 8. But finding "a potential danger to the community" falls short of finding that the officers entertained a specific belief that someone in the shed needed immediate help, a necessary step in authorizing an emergency entry into the shed. Kinzy, 141 Wash.2d at 386-87, 5 P.3d 668.
¶ 18 Generally, we have endorsed an emergency entry only where the officers reasonably believed that a specific person or persons needed immediate help for health or safety reasons. See, e.g., Lynd, 54 Wash. App. at 22-23, 771 P.2d 770 (where police officer had knowledge of 911 hang-up call from defendant's home, the phone line remained busy after the 911 call, a domestic violence incident between spouses had just occurred, defendant was loading his things *381 into his vehicle and preparing to leave, and defendant did not want the officer to enter the home to check on his wife, emergency exception justified warrantless entry into defendant's home to investigate the well-being of the wife); see also State v. Gocken, 71 Wash.App. 267, 272-77, 857 P.2d 1074 (1993) (the emergency exception justified a warrantless search where police officers entered the defendant and victim's condominium and kicked in the victim's bedroom door to perform a "routine check on [the victim's] welfare" after reports of decaying flesh odor and reports from family and friends that they had not seen the victim for several weeks). We are unwilling to extend the doctrine to authorize warrantless entries where the officers express only a generalized fear that methamphetamine labs and their ingredients are dangerous to people who might live in the neighborhood.
¶ 19 Because the State did not prove and the trial court did not find that the deputies subjectively believed someone on Lawson's property needed assistance for health or safety reasons, the court erred in denying Lawson's motion to suppress. See Kinzy, 141 Wash.2d at 386, 5 P.3d 668. And because the State argues only that officers were not required to advise Lawson of the Ferrier warnings because exigent circumstances justified their entry, we do not address consent.
¶ 20 Reversed and remanded.
I concur: VAN DEREN, A.C.J.
HUNT, J.
¶ 21 I respectfully dissent. The trial court found as fact that the officers'
primary purpose and intent . . . when responding [to] the defendant's property was to investigate a possible danger to any person on the defendant's property and to the surrounding community and was not for the purpose of obtaining consent to search the property and to gather evidence of illegal drug activity and thereby avoid the necessity of obtaining a warrant.
Disputed Finding of Fact 1, Clerk's Papers (CP) at 8.
¶ 22 Our task is to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law, which are reviewed de novo. State v. Vickers, 148 Wash.2d 91, 116, 59 P.3d 58 (2002); State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).[4]
¶ 23 Here, there is substantial evidence to support the trial court's finding. Both officers testified (1) they were dispatched to Lawson's property in response to a citizen's report of having seen two men with glass jars on the property, from which was emanating a powerful odor that caused the citizen's eyes and throat to burn; (2) when the officers arrived, they immediately noticed the odor of anhydrous ammonia; (3) they were familiar with the hazards associated with methamphetamine labs, such as the risk of explosions and severe injury due to exposure with hazardous chemicals or harmful gasses; and (4) the houses in Lawson's neighborhood are very close together, some only 25 to 50 feet from Lawson's shed.
¶ 24 The trial court found that the officers were credible; and there was no contradictory evidence. The trier of fact, not the appellate court, is the judge of witness credibility. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990). Thus, we must defer to the trial court's finding that the officers responded to Lawson's property to follow up on the citizen's complaint of a strong odor emanating from Lawson's shed that was irritating the citizen's eyes and throat.

I. EMERGENCY EXCEPTION
¶ 25 The majority (1) concludes that, "[g]enerally, we have endorsed an emergency entry only where the officers reasonably believed that a specific person or persons *382 needed immediate help for health or safety reasons"; and (2) declines to "extend" the emergency exception to circumstances in which officers express a "generalized" fear that methamphetamine labs are dangerous to people who might live nearby. Because (1) the officers here made a warrantless entry into Lawson's shed due to the hazardous gas danger to nearby people and property, and (2) we have previously authorized similar searches, I disagree.
¶ 26 Washington courts have applied the emergency exception where "premises contain the following: (1) persons in imminent danger of death or harm; (2) objects likely to burn, explode, or otherwise cause harm; or (3) information that will disclose the location of a threatened victim or the existence of such a threat." Charles W. Johnson, Survey of Washington Search and Seizure Law: 2005 Update, 28 Seattle Univ. L.R. 467, 631-32 (2005) (emphasis added); see also 3 W. LaFave, Search and Seizure § 6.5(d) (4th ed.2004).
¶ 27 State v. Downey, 53 Wash.App. 543, 768 P.2d 502 (1989) is instructive. Two police officers were dispatched to Downey's residence to investigate a report of a strong odor of ether, which is often associated with the manufacture of methamphetamine. Id. at 543-44, 768 P.2d 502. When the officers arrived, they immediately noticed the odor, which increased as they moved closer to Downey's residence. Id. at 543-44, 768 P.2d 502. The officers contacted the police narcotics unit for advice about how to proceed; the narcotics unit responded that ether is highly volatile and explosive.
¶ 28 The officers entered Downey's residence without a warrant to determine the source of the odor and to ensure no one was inside. Inside the residence, one of the officers observed a "chemical-type lab" with a substance cooking on a burner. Id. at 544, 768 P.2d 502. The officer immediately exited Downey's residence, called narcotics detectives, obtained a search warrant, and then seized small amounts of methamphetamine in the manufacturing stage. Id. at 544, 768 P.2d 502.
¶ 29 Following his conviction for possession of a controlled substance with intent to manufacture or deliver, Downey appealed, arguing that the odor of ether was insufficient to create an exigent circumstance; Division I of our court disagreed. First, the appellate court approved the trial court's finding of fact that, based on the officers' actions, there was "no question that the officers believed that they had a very dangerous, emergency situation on their hands." Id. at 545, 768 P.2d 502. Second, the appellate court held that the search was objectively reasonable for several reasons: (1) the officers knew that ether was extremely volatile and explosive; (2) Downey's home was in a residential area; and (3) the officers did not know whether someone incapacitated by the fumes remained in Downey's residence. Id. at 545, 768 P.2d 502.
¶ 30 Similarly, here, officers visited Lawson's residence in response to a citizen complainta neighbor's eyes and throat were burning due to a chemical odor emanating from Lawson's shed. When the officers arrived, they immediately noticed the odor, which became stronger as they approached Lawson's shed. The officers proceeded to the shed because they were familiar with the odors from chemicals involved in the manufacture of methamphetamine and with the danger those chemicals presented to nearby people and property, including the risk of inhalation, flammability, or even explosion.[5]
¶ 31 The trial court ruled that the officers responded to Lawson's property primarily to investigate the possible danger to any person or property resulting from the overwhelming odor. The officers' actions support that they subjectively believed an emergency existed *383 the officers conducted a brief sweep of the shed to look for individuals, they cleared Lawson's home, backed Lawson away from the shed, and contacted their department's methamphetamine lab team. Based on these facts, I would affirm the trial court's finding of fact and conclusions of law that the officers had a subjective belief that an emergency existed, the belief was objectively reasonable due to the presence of a suspected methamphetamine lab in a residential neighborhood,[6] and, therefore, the officers had a reasonable basis for conducting a brief sweep of the shed.
¶ 32 The majority's reliance on State v. Schlieker, 115 Wash.App. 264, 62 P.3d 520 (2003) does not persuade me otherwise. In Schlieker, we concluded that the officers did not subjectively believe an emergency existed when they searched a trailer because (1) the domestic violence call to which the officers responded did not concern the trailer; (2) the officers found both individuals in the alleged domestic violence incident at the residence, unharmed; (3) the State conceded the officers were at the trailer to investigate criminal activity to which they were alerted while investigating the alleged domestic violence incident, not out of concern for the individuals' safety; (4) the officers did not inquire about the well-being of the individuals they detained near the shed; and (5) instead, the officers immediately handcuffed and arrested these individuals. Id. at 271-72, 62 P.3d 520.
¶ 33 Similar facts are not present here. Here, (1) the officers believed Lawson's shed was the source of the citizen-reported emergency; (2) the officers were unaware whether any individuals were in the shed; (3) the officers were justifiably concerned about the hazards the chemical odor posed to nearby people and property; (4) they moved Lawson away from the shed for his own safety and asked his girlfriend to exit the residence; and (5) they did not arrest Lawson until after they found the methamphetamine lab.[7]
¶ 34 In addition, contrary to the majority's suggestion, there were specific individuals in need of assistance from the officers who responded to a call about the chemical odor emanating from Lawson's shed: (1) Lawson's neighbor, who had reported that her eyes and throat were burning; (2) Lawson, who was standing near the potentially dangerous shed when the officers arrived; and (3) Lawson's girlfriend, who was inside Lawson's residence near the shed. And there were other residences 25 to 50 feet from Lawson's shed, in a residential neighborhood where other adults and children are often present.
*384 ¶ 35 Courts have repeatedly recognized that the general public and property are worthy of protection under the emergency exception and that, during emergencies, officers will often not know if any specific persons are in need of assistance until they investigate further. United States v. Rhiger, 315 F.3d 1283, 1288-89 (10th Cir.2003) (Threats to public safety, such as active methamphetamine labs, are widely accepted as one of the exigent circumstances exceptions to the Fourth Amendment's warrant requirement.), cert denied, 540 U.S. 836, 124 S.Ct. 90, 157 L.Ed.2d 65 (2003); Downey, 53 Wash.App. at 545-46, 768 P.2d 502; Charles W. Johnson, Survey of Washington Search and Seizure Law: 2005 Update, 28 Seattle Univ. L.R. at 631-32.
¶ 36 Based on the specific facts of this case, I would hold (1) a working methamphetamine lab in an environment that poses a threat of immediate harm to life and property, presents exigent circumstances justifying entry without a warrant, and (2) the officers' warrantless intrusion into Lawson's shed was justified under the emergency exception. Therefore, I would affirm Lawson's convictions.

II. CONSENT
¶ 37 The majority declines to address the consent exception to the warrant requirement because the State argued that the emergency exception justified the officers' entry into Lawson's shed. But we may affirm the trial court on any grounds that the record adequately supports. State v. Costich, 152 Wash.2d 463, 477, 98 P.3d 795 (2004). And, here, that Lawson freely gave the officers consent to enter his property and shed provides an additional ground to support the trial court's denial of Lawson's motion to suppress.
¶ 38 Once the officers arrived at the scene, they observed Lawson standing by the shed beckoned him over, explained their purpose to investigate a complaint of a strong chemical odor coming from his property, asked if the house was his, and asked for permission to enter his property to check out the odor. The trial court found that Lawson "freely gave Deputies Eldrige and Mundell permission to come onto the property." Undisputed Finding of Fact 12, CP at 6. When Mundell asked Lawson for permission to look inside the shed, Lawson again consented. Consent is a recognized exception to the warrant requirement. State v. Cantrell, 124 Wash.2d 183, 187, 875 P.2d 1208 (1994). In other words, once Lawson consented to a search of his property and shed, no warrant was required and therefore, the officers' warrantless entry and search were lawful.
¶ 39 Lawson argues that his consent to search was not valid because the officers did not first give him Ferrier warnings, explaining his right to refuse consent to search the shed. This argument fails. Because, as the trial court found, the officers' intent in going to Lawson's property was to check on a reported danger, not to investigate a crime without a warrant, Ferrier does not apply and we should accept the trial court's evidence-supported finding that Lawson's consent was freely given. State v. Kennedy, 107 Wash.App. 972, 976-77, 29 P.3d 746 (2001) (observing that our State Supreme Court has limited Ferrier to situations where officers proceed to a residence believing contraband will be found, contact a resident, seek entrance into a home, and then ask for permission to conduct a search; Ferrier is not required where officers have a warrant or are responding to a 911 emergency call); see also State v. Johnson, 104 Wash.App. 489, 505-06, 17 P.3d 3 (2001), review denied, 145 Wash.2d 1030, 42 P.3d 975 (2002).
¶ 40 I would hold that no Ferrier warning was required: The record supports the trial court's finding that Lawson had authority to consent, his consent was voluntary, and the officers' search did not exceed the scope of the consent. State v. Hastings, 119 Wash.2d 229, 234, 830 P.2d 658 (1992). Once the officers lawfully entered the shed, with Lawson's consent, they observed methamphetamine-production equipment and materials in plain view. Because the officers were lawfully inside the shed, with Lawson's consent, they did not need a warrant to search or to seize the evidence of the crime. Id. at 234, 830 P.2d 658. I would affirm.
NOTES
[1] State v. Ferrier, 136 Wash.2d 103, 118-19, 960 P.2d 927 (1998) (when police officers conduct a knock and talk for the purpose of obtaining consent to search a home, they must, before entering the home, tell the person from whom they seek consent that he or she may lawfully refuse to consent to the search and that they can, at any time, revoke the consent and limit the scope of the consent to certain areas of the home).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Lisoski is Lawson's girlfriend. She was at Lawson's house when Deputy Eldridge and Deputy Mundell searched the shed and arrested Lawson.
[4] In State v. Hill, 123 Wash.2d 641, 870 P.2d 313 (1994), our State Supreme Court rejected a line of cases in which the appellate courts had engaged in an independent evaluation of the facts following a suppression hearing. Id. at 644-45, 870 P.2d 313. The court reasoned that the "trier of fact is in a better position to assess the credibility of witnesses, take evidence, and observe the demeanor of those testifying" and "[t]here is adequate opportunity for review of trial court findings within the ordinary bounds of review." Id. at 646-47, 870 P.2d 313.
[5] Lawson has not assigned error to the trial court's findings that (1) Lawson's property is in a residential neighborhood where adults and child are often present; and (2) there are homes in the immediate vicinity, including two homes that abut Lawson's property approximately 25 to 50 feet away from the shed where the odor and methamphetamine-related items were found.

It is well-established that we treat an unchallenged finding of fact as a verity on appeal. Hill, 123 Wash.2d at 644, 870 P.2d 313. This rule also applies to facts entered following a suppression motion, as was the case here. State v. Christian, 95 Wash.2d 655, 656, 628 P.2d 806 (1981).
[6] The majority of courts that have addressed whether a warrantless entry based on the likelihood of a clandestine methamphetamine lab constitutes an exigent circumstance have answered in the affirmative. United States v. Rhiger, 315 F.3d 1283, 1288-89 (10th Cir.2003); United States v. Walsh, 299 F.3d 729, 734 (8th Cir.2002); United States v. Wilson, 865 F.2d 215, 217 (9th Cir.1989); United States v. Clark, 617 F.Supp. 693, 696-98 (E.D.Pa.1985), aff'd, 791 F.2d 922 (3d Cir.1986); United States v. Brock, 667 F.2d 1311, 1318 (9th Cir.1982); Coffey v. State, 2004 OK Cr 30, 99 P.3d 249 (Okla.Crim.App.2004); State v. Rowland, 73 S.W.3d 818, 823 (Mo.App. 2002); VanWinkle v. State, 764 N.E.2d 258, 266-67 (Ind.App.2002); State v. Fee, 135 Idaho 857, 26 P.3d 40, 44 (Idaho App.2001); State v. Chapman, 107 Or.App. 325, 813 P.2d 557, 560-61 (1991); State v. Calloway, 111 N.M. 47, 801 P.2d 117, 119-20 (N.M.App.1990).

See also United States v. Spinelli, 848 F.2d 26, 30 (2nd Cir.1988) (exigent circumstances included combination of defendant's known violent nature, probability defendant was armed, volatile nature of chemicals used in methamphetamine, and likelihood of explosion); Buchanan v. State, 129 S.W.3d 767, 774 n. 3 (Tex.Ct.App.2004) (odor and danger posed by methamphetamine lab would constitute exigent circumstance); People v. Duncan, 42 Cal.3d 91, 720 P.2d 2, 9-10, 227 Cal.Rptr. 654 (Cal.1986) (odor of ether and suspected methamphetamine lab may justify warrantless entry on case-by-case basis). But see People v. Gott, 346 Ill.App.3d 236, 281 Ill.Dec. 279, 803 N.E.2d 900, 907-08, (2004) (odor of ether and suspicion of methamphetamine lab not enough for public safety exigent circumstance without evidence that officer was aware of dangerous nature of chemicals); People v. Winpigler, 8 P.3d 439, 446 (Colo.1999) (circumstances were not exigent without evidence that volatile chemicals were present and were in the process of being mixed or dumped); United States v. Jackson, 199 F.Supp.2d 1081, 1090 (D.Kan.2002) (odor of anhydrous ammonia and suspicion of laboratory do not constitute exigent circumstances without evidence of volatile nature of chemicals, danger of explosion, or danger of immediate physical harm to bystanders).
[7] Although the officers were armed, the trial court found that the officers did not have their firearms drawn.