# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>Appellant,<br><br>v.<br><br>JEFFREY ALLEN BEACH,<br><br>Respondent. | No. 78464-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: August 5, 2019 |

APPELWICK, C.J. — The State charged Beach with possession of a stolen vehicle. Beach moved to suppress evidence that resulted from law enforcement's warrantless entry into the house where they arrested Beach. Finding that the community caretaking exception did not apply, the trial court granted the motion to suppress evidence and dismissed the case. We affirm.

## FACTS

Around 7:00 a.m. on November 27, 2017, a person called 911 to report a young child walking by himself near a major intersection. Officer Jason Nixon responded to the 911 report, and took custody of the child from the person who had found him. Although it was between 30 and 40 degrees outside, the child was shoeless, in pajamas, and carrying a blanket. Officer Nixon decided to drive around the neighborhood to look for the child's home.

About three blocks from where he picked up the child, the officer saw a house with its front door open. The officer decided to run the license plate of the

car in the driveway. He learned that the car had been reported stolen and called for backup. At that point, the officer's interest in determining whether the child lived at the house was "secondary to figuring out if this was a home invasion robbery." After backup officers arrived, they surrounded the house, with one or two officers going to the back of the house in case someone tried to exit from the back door.

Officer Nixon, Officer Thomas Riener, and Sergeant Robert Constant went to the front door. They knocked loudly "on the outside of the house" and announced themselves for approximately 30 seconds. When there was no answer, they drew their guns and entered the house, yelling, "This is the Kent Police Department. Come out with your hands up."

Jeffrey Beach and his girlfriend Tara Hall emerged from a rear bedroom. They said that they had been sleeping. After identifying Beach and Hall, the officers learned that they each had outstanding warrants. The officers arrested Beach and Hall. While searching Beach upon arrest, the police found a key fob to the car in the driveway.

The officers also found out that Hall had been staying at the house for three days. The owners of the house had asked her to watch their child, the same child that was found blocks away.

The State charged Beach with one count of possession of a stolen vehicle. Beach moved to suppress any evidence resulting from the warrantless search. The State argued that the warrantless search was valid under the community caretaking exception because there was real and immediate danger of an ongoing home invasion. The trial court conducted a hearing pursuant to CrR 3.6. After

hearing testimony by Officers Nixon and Riener and Sergeant Constant, the court found that the State had not established that the officers were acting within the scope of their community caretaking function, and suppressed the evidence. Beach moved to dismiss. The State deferred to the court, and the court granted the motion. The State appeals.

## DISCUSSION

The State argues that the trial court erred in finding that the community caretaking exception did not apply and suppressing the evidence. It contends that the court erred in finding that the entry was objectively unreasonable.[1]

### I. Standard of Review

An appellate court reviews findings of fact related to a motion to suppress under the substantial evidence standard. State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding. Id. This court reviews conclusions of law pertaining to suppression of evidence de novo. Id.

### II. Warrantless Search

The United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. Article I, section 7 in our state constitution is often more protective than the Fourth Amendment, particularly where warrantless

---

[1] The State also argues that the trial court erred in finding that the officers' subjective intent was to investigate criminal activity. And, it asserts that, because the police knew of the stolen car, they had "mixed motives" in their search, but that the car was "subordinate to community caretaking, and mixed motive searches are constitutionally permissible." Because our analysis resolves on whether the entry was objectively reasonable, we do not reach the issue of subjective intent of the officers.

searches are concerned. State v. Smith, 177 Wn.2d 533, 539, 303 P.3d 1047 (2013). Under our state constitution, warrantless searches are per se unreasonable unless one of the narrow exceptions to the warrant requirement applies. Id. The burden of proof is on the State to show that a warrantless search or seizure falls within one of the exceptions to the warrant requirement. State v. Morse, 156 Wn.2d 1, 7, 123 P.3d 832 (2005).

A. Community Caretaking Exception

The community caretaking function exception encompasses situations involving emergency aid, and also routine checks on health and safety. State v. Kinzy, 141 Wn.2d 373, 386, 5 P.3d 668 (2000). Compared with routine checks on health and safety, the emergency aid function involves circumstances of greater urgency and searches resulting in greater intrusion. Id.

The State asserts that the trial court analyzed the search under the "health and safety check" factors. Beach disagrees, and asserts that the trial court analyzed the validity of the search under the emergency aid component of the community caretaking exception. Ultimately, the State asserts that, under either analysis, the facts of this case fall under the community caretaking exception. And, Beach asserts that, under either analysis, the State's warrantless search was outside the scope of the community caretaking function, and asks this court to affirm.

The parties present the same test for determining whether officers conducted a health and safety check. The State must show that "(1) the officer subjectively believed someone needed health or safety assistance, (2) a

reasonable person in the same situation would believe that there was a need for assistance, and (3) there was a reasonable basis to associate the need for assistance with the place searched." State v. Weller, 185 Wn. App. 913, 924-25, 344 P.3d 695 (2015). Under the health and safety check test, the State must also show that the encounter under this exception was reasonable, which depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a community caretaking function. Id. at 925. When weighing the public's interest, this court must cautiously apply the community caretaking function exception because of the potential for abuse. Id.

The State and Beach do not agree on which test the court applies in analyzing the emergency aid exception. The State cites the test our Supreme Court articulated in Smith:

> [L]aw enforcement may make a warrantless search of a residence if (1) it has a reasonable belief that assistance is immediately required to protect life or property, (2) the search is not primarily motivated by an intent to arrest and seize evidence, and (3) there is probable cause to associate the emergency with the place to be searched.

177 Wn.2d at 541. In contrast, Beach relies on the six part test the court approved in State v. Schultz, 170 Wn.2d 746, 754-55, 248 P.3d 484 (2011):

> [T]he government must show that "(1) the officer subjectively believed that someone likely needed assistance for health or safety concerns; (2) a reasonable person in the same situation would similarly believe that there was need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place being searched." The Court of Appeals has suggested three more factors: (4) there is an imminent threat of substantial injury to persons or property; (5) state agents must believe a specific person or persons or property is in need of immediate help for health or

5

safety reasons; and (6) the claimed emergency is not a mere pretext for an evidentiary search. We agree.

(citations omitted) (quoting Kinzy, 141 Wn.2d at 386-87).

We do not have to resolve the issue of which test should be applied, because whether the officers had an objectively reasonable belief that assistance was required is a factor in each of the tests.[2] That factor is dispositive here.

## B. Reasonable Belief of Need for Assistance

The State must show that "a reasonable person in the same situation would believe that there was a need for assistance."[3] Weller, 185 Wn. App. at 924-25.

The State asserts that "an objective officer would not have been satisfied that no emergency existed prior to the discovery of Beach and Hall." And, the State argues that the facts here are similar to those in State v. Menz, 75 Wn. App. 351, 880 P.2d 48 (1994). In Menz, there was a 911 call reporting domestic violence in progress at a specific address. Id. at 352. When officers responded to the call, they found the front door to the home open. Id. at 353. They could not see into the home, but the lights were on and they could hear a television playing

---

[2] This court has previously split over whether the same test should be applied if the issue involves an emergency or a routine check on health and safety. See State v. Boisselle, 3 Wn. App. 2d 266, 297-98, 299, 415 P.3d 621 (2018) (Spearman, J., concurring), review granted, 191 Wn.2d 1004, 424 P.3d 1210 (2018). Recently, discussing Smith, Kinzy, and Schultz, this court expressed, "The two formulations apply essentially the same test." State v. Harris, No. 77987-7-I, slip op. at 4-5 (Wash. Ct. App. Jul. 22, 2019), http://www.courts.wa.gov/opinions/pdf/779877.pdf. Like here, Harris resolves on whether the officers had a reasonable, objective basis to believe there was an immediate need for assistance. Id. at 5.

[3] Again, this is required under the health and safety check exception under Weller, as well as the emergency aid analysis under Schultz. Weller, 185 Wn. App. at 924-25; Schultz, 170 Wn.2d at 754. Similarly, Smith requires that the officer "has a reasonable belief that assistance is immediately required to protect life or property." 177 Wn.2d at 541

inside. Id. The court highlighted that the officers were responding to a report of domestic violence. Id. at 354. It concluded that a "reasonable person facing this combination of circumstances would have thought that someone inside needed assistance, and the officers were within the emergency exception when they entered." Id.

In Menz, the court distinguished the facts from those in State v. Swenson, 59 Wn. App. 586, 799 P.2d 1188 (1990), stating,

> The only peculiar circumstance in that case was that the front door was open at 2:30 a.m. There was no indication that anyone was home, no indication that anyone was being hurt, and no indication that a crime was taking place. In contrast, the police in this case were told that domestic violence was occurring. They had reason to believe people were home because the front door was open on a winter night, the lights were on, and the TV was playing.

Id. at 355. The Swenson court observed, "There was no report of injured individuals or of persons acting inappropriately in the vicinity of Swenson's residence. . . . [The police] had no indication of forced entry, nor did they have any reason to suspect that individuals, injured or not, were in the residence." 59 Wn. App. at 590. The court held that the facts would not justify a reasonable officer in the same circumstances to believe an emergency existed. Id.

Conceding that this case lacks the 911 call of Menz, the State nonetheless argues that "the additional circumstances in this case — the lost child and stolen vehicle — at the very least equal a nebulous 911 call." But, before the officers entered the home, there was no connection between the child and the residence. A stolen vehicle in the driveway is a foundation for a criminal investigation, but does not compel a reasonable person to believe that someone inside the adjacent

7

house needs health or safety assistance, or emergency aid. As in <u>Swenson</u>, the front door was open, but there was no report of anyone injured or acting inappropriately relating to the house, there was no indication of forced entry, and there was also no indication that anyone was even in the home. This case is more similar to <u>Swenson</u>, in which the court held that the warrantless entry was not objectively reasonable, than it is to <u>Menz</u>.

In <u>Schultz</u>, the State Supreme Court recited the facts "most favorable to the State":

> The police received a phone call from a resident of an apartment complex about a yelling man and woman. The responding officers stood outside and overheard a man and woman talking loudly. The officers heard a man say that he wanted to be left alone and needed his space. The officers knocked on the door. Schultz opened it, appearing agitated and flustered. Officer Malone asked Schultz about the male occupant of the apartment. Schultz told her no one was there but, when confronted with the fact the officers heard voices, summoned Robertson from a nearby bedroom. When Robertson appeared, the officers entered Schultz's apartment based upon her acquiescence only.

170 Wn.2d at 760. The court stated, "We have no reason to doubt the officers subjectively believed that entry was necessary or that they acted in good faith." <u>Id.</u> But, it held, "At the moment the officers crossed the threshold to Schultz's apartment, they did not have enough facts to justify an entry based upon the emergency aid exception to the warrant requirement." <u>Id.</u>

The State asserts that this case is distinguishable from <u>Schultz</u>. The State points out that, in <u>Schultz</u>, "the parties to the argument . . . were accounted for, no injuries were observed at the door, and no request for help was made."

8

Here, there was a 911 report about a child wandering blocks away. When Nixon stopped his police car outside of the residence, the child did not indicate that he had any connection to the house. No connection between the child and the house was established until after the officers entered. Any concern for the child was not an ongoing emergency that would merit the officers going into the home.

And here, the officers did not know of any requests for help from the house before they entered. They did not know anyone was unaccounted for and saw no evidence anyone had been injured. The officers did not see any broken windows, signs of forced entry, or other evidence of a break-in. Once in the doorway, Officer Nixon did not see anything in disarray inside the home that would indicate a struggle or ongoing emergency. When the officers went into the home, the house was in "fine condition." The officers here had less objective reason to enter the house than the officers in Shultz.

In a caretaking situation, the admissibility of the evidence discovered depends on a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a community caretaking function. Kinzy, 141 Wn.2d at 387. When weighing these interests, "'the balance ought to be struck on the side of privacy.'" Id. at 392 (quoting United States v. Dunbar, 470 F. Supp. 704, 708, (D. Conn.), aff'd, 610 F.2d 807 (2d Cir. 1979)).

Here, the trial court ruled,

> [T]he context may be considered, and should be considered. The fact that a child was wandering unaccompanied in cold weather without covering on his feet, the fact that there was an open door in

the cul de sac [sic], the fact that there was a car that apparently was stolen in the driveway, all of those are appropriately considered, but are they sufficient in fact to meet the State's burden regarding the exception? And the court answers in the negative.

The record reflects several possible scenarios for a door being open and a child wandering through the streets. Oversleeping. Somebody overdosing. Errant babysitting. And then, of course, there is that possibility of a home invasion.

Regarding the home invasion possibility, yes, there was a suspected stolen car in the driveway. However, there was no 911 call as there was in Schultz. There was no evidence of forced entry. There was no visible damage to the door. And under these circumstances, the court rules that the State has failed to meet its burden to show an imminent threat of substantial injury to persons or property or that there was a need for immediate help or safety such that the community caretaking exception should be properly applied.

In this particular fact pattern, there was no specific person identified as needing help. We don't have any loud voices. The neighbor left without incident. There was no 911 call. None of those kinds of things that we talk about in Schultz and in some other cases were presented in this case.

Further and finally, the record shows that a primary goal of the entry into the house was to gather evidence associated with a suspected stolen vehicle. The lead officer after 8:00 approximately was the auto theft specialist. The wandering child was safely seated in the police car. Again, no record of forced entry, no neighborhood concern, no 911 call. The exception does not apply.

This Court must cautiously apply the community caretaking function exception because of a real risk of abuse in allowing even well-intentioned stops to assist. Kinzy, 141 Wn.2d at 388. Substantial evidence supports the trial court's finding that a reasonable person would not have believed that there was a need for immediate assistance. Thus, the trial court did not err in concluding that the

community caretaking exception to the warrant requirement did not apply and suppressing the evidence.[4]

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Mann, ACJ._          _Dwyer, J._

---

[4] Because we find that the State has not carried its burden as to objective reasonability, neither prong of the community caretaking function test can be met.